Russell S. BOWELL, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1175.

Court of Appeals of Alaska.

Dec. 5, 1986.

William A. Davies, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Russell S. Bowell was convicted by a jury of kidnapping in violation of AS 11.41.-300(a)(1), and first-degree sexual assault in violation of AS 11.41.410(a)(1). Bowell appeals, challenging his conviction. We affirm Bowell's conviction, but remand to permit the trial court to consider Bowell's motion for a new trial.

## FACTS

James D. Thomas, Bowell's codefendant, sexually assaulted B.S. in the back of a vehicle driven by Bowell. B.S. testified that she had been walking when she observed two men she later learned to be Bowell and Thomas in a Toyota driving slowly by her. Thomas asked her if she wanted a ride, and she accepted. The vehicle apparently had no rear seats. B.S. entered it and sat on the floor where she observed a pit bull, whose name she later learned was "Crusher." Thomas got into the back with her and put the dog in the passenger seat. B.S. testified that Thomas told her that she would have to pay for her ride, and asked her if she knew how to "give a good blow job." B.S. asked to be let out of the vehicle, but was not permitted to leave.

B.S. testified that Thomas forced her to engage in vaginal, oral and anal intercourse during the following three hours. She also testified that Thomas told Bowell that when he (Thomas) was through, it would be Bowell's turn. Bowell then told Thomas to hurry up because they were running low on "octane." Thomas also threatened B.S. with a gun, as well as threatening that he was going to get a chainsaw, cut off her arms and legs and leave her in a snowbank. Bowell corroborated B.S.'s testimony in part, by testifying that he remembered hearing Thomas mention something about a chainsaw.

In B.S.'s view, Bowell assisted Thomas in coercing the intercourse by responding to Thomas' request to stop and start the car, by obtaining a gun for Thomas to use to overcome B.S.'s resistance, and by keeping "Crusher" out of the back of the car. The most pointed example of this assistance occurred when Thomas told Bowell that B.S. was not cooperating, and asked him to hand back the gun. B.S. testified that Bowell took the gun out of the glove compartment, loaded it, and handed it back to Thomas who placed it against B.S.'s neck.

## DISCUSSION

The theory of the prosecution identified Bowell as a principal to B.S.'s kidnapping, reasoning that his driving the vehicle and ignoring her pleas to be released, constituted the restraint required for a conviction of kidnapping. AS 11.41.300(a)(1)(C) (a person commits the crime of kidnapping if [he] restrains another person with intent to ... sexually assault the restrained person or place the restrained person ... in apprehension that any person will be subjected to ... sexual assault). Bowell does not challenge his conviction for kidnapping on appeal.

The state also theorized that Bowell was an accomplice to Thomas' first-degree sexu-

al assault of B.S. Bowell vigorously attacks his conviction on this count. He reasons that the accomplice statute is constitutionally defective for failing to require a culpable mental state. Alternatively, he argues, that if a culpable mental state is required by the statute, that fact was not sufficiently communicated to the jury in the relevant jury instructions. Bowell concedes that he did not object to the instructions at trial, and therefore must establish plain error in order to prevail on this part of his argument. Alaska R.Crim.P. 47(b). Finally, Bowell argued that the trial court should have granted a judgment of acquittal on this issue. We will address each of Bowell's arguments in turn.

Bowell reasons that AS 11.16.110(2)(B) creates a legal accountability for a person who aids or abets another person in the commission of a criminal offense, but is deficient in failing to provide a "mental element" for "aiding or abetting."

Alaska Statute 11.16.110 provides as follows:

> *Legal accountability based upon the conduct of another: Complicity.*
>
> A person is legally accountable for the conduct of another constituting an offense if
>
> ... (2) with intent to promote or facilitate the commission of the offense, the person
>
> ... (B) aids or abets the other in planning or committing the offense.

The state counters that Bowell has misread the statute, and that the introductory language to AS 11.16.110(2)(B), "with intent to promote or facilitate the commission of the offense" supplies the *mens rea* for accomplice liability, while "aids or abets" describes the *actus reus* of the offense. The state's position finds support in the 1977 Commentary to the Tentative Draft of the Alaska Criminal Code Revision Part II at

25, and in the Commentary to the Model Penal Code provision from which our statute is derived, A.L.I., *Model Penal Code and Commentaries* Part I § 2.06 (1985). The Commentary states in relevant part:

> Subsection (3)(a) requires that the actor have the purpose of promoting or facilitating the commission of the offense, *i.e.,* that he have as his conscious objective the bringing about of conduct that the Code has declared to be criminal. This is not to say that he must know of the criminality of the conduct; there is no more reason here to require knowledge of the criminal law than there is with the principal actor. But he must have the purpose to promote or facilitate the particular conduct that forms the basis for the charge, and thus he will not be liable for conduct that does not fall within this purpose.

*Id.* § 2.06 at 310–11 (footnote omitted).[1]

In summary, in order to be liable as an accomplice for Thomas' sexual assault on B.S., it was necessary that the state prove beyond a reasonable doubt that Bowell was aware that Thomas intended to have sexual intercourse with B.S. and, intending to facilitate Thomas in achieving his goal, performed some act of aid or encouragement. While the statute interpreted in this way will adequately provide both the *mens rea* and an *actus reus* for most offenses, it does present certain difficulties in connection with crimes such as first-degree sexual assault, which include the circumstances surrounding an offender's conduct as an element of the offense. The Commentary to the Model Penal Code discusses this problem as follows:

> There is a deliberate ambiguity as to whether the purpose requirement [the requirement that in order to be guilty as an accomplice, the actor have the purpose of promoting or facilitating the commission of the offense] extends to cir-

---

1. The culpable mental state "intentionally" is defined as follows:

 AS 11.81.900. Definitions.
 (a) For purposes of this title, unless the context requires otherwise,
 (1) a person acts "intentionally" with respect to a result described by a provision of

law defining an offense when the person's conscious objective is to cause that result; when intentionally causing a particular result is an element of an offense, that intent need not be the person's only objective. ...

cumstance elements of the contemplated offense or whether, as in the case of attempts, the policy of the substantive offense on this point should control. The reasoning is the same as in the case of conspiracy, which is set forth in some detail in Section 5.03 Comment 2(c)(ii). The result, therefore, is that the actor must have a purpose with respect to the proscribed conduct or the proscribed result, with his attitude towards the circumstances to be left to resolution by the courts. His attitude towards the criminality of the conduct, *see* Section 2.02(9), is irrelevant here as it is in the other cases, subject of course to the limitation of Section 2.04(3) (ignorance or mistake of fact or law).

A.L.I., *Model Penal Code and Commentaries* Part I § 2.06 n. 37, at 311 (1985).[2]

 Under current law, the state's burden to establish a culpable mental state in order to convict a person as an accomplice is a matter of first impression. *See Hensel v. State,* 604 P.2d 222 (Alaska 1979) (considering the issue of the requisite mental state for accomplice liability under prior law). In *Reynolds v. State,* 664 P.2d 621 (Alaska App.1983), we held that the state must prove a culpable mental state regarding the "circumstance"—lack of consent—in order to convict a principal of the offense of first-degree sexual assault. "In order to prove a violation of AS 11.41.-410(a)(1), the state must prove that the defendant knowingly engaged in sexual intercourse and recklessly disregarded his victim's lack of consent." 664 P.2d at 625. Similar reasoning leads us to conclude that the state must prove the same element in order to convict a person of first-degree sexual assault as an accomplice. In other words, in order to convict Bowell as an accomplice of Thomas' first-degree sexual assault of B.S., the state was required to prove that Bowell knew that Thomas intended to engage in sexual intercourse with B.S., that he intentionally engaged in conduct facilitating Thomas' efforts, and that at the time he aided Thomas, he recklessly disregarded B.S.'s lack of consent to Thomas' overtures.[3]

2. As indicated, the commentary to Model Penal Code § 2.06 discusses a problem which is also discussed in the commentary to Model Penal Code § 5.03, dealing with criminal conspiracy. There the commentators state:

The conspiracy provision in the Code does not attempt to solve the problem [whether culpability with respect to circumstance elements is required] by explicit formulation, nor have the recent legislative revisions. Here, as in the section on complicity, it was believed that the matter is best left to judicial resolution as cases that present the question may arise and that the formulations proposed afford efficient flexibility for satisfactory decision. Under Subsection (1) of Section 5.03 it is enough that the object of the agreement is "conduct that constitutes the crime," which can be held to import no more than the mental state required for the substantive offense into the agreement to commit it. Although the agreement must be made "with the purpose of promoting or facilitating the commission of the crime," it is arguable, though by no means certain, that such a purpose may be proved although the actor did not know of the existence of a circumstance, which did exist in fact, when knowledge of the circumstance is not required for the substantive offense. Rather than press the matter further in this section, the Institute deliberately left the matter to interpretation in the context in which the issue is presented. Too many variations, many of which cannot be foreseen with any confidence, could otherwise be expected to arise and undermine any more rigid formula. A.L.I., *Model Penal Code and Commentaries* Part I § 5.03, at 413–19 (1985) (footnotes omitted).

3. At Bowell's request, the trial court instructed the jury that Bowell's culpability depended in part upon a finding that Thomas recklessly disregarded B.S.'s lack of consent. We express no opinion as to whether Bowell's culpability required a finding of this element. As we noted in *Reynolds,* a claim by one charged with sexual assault that he reasonably or unreasonably disregarded his victim's lack of consent is akin to a defense of mistake of fact. 664 P.2d at 624–25. Such a defense might be personal to the actor. Thus, a jury might find that A with the active assistance of B engaged in sexual intercourse with C and that C in fact did not consent. The jury might further find that B, the accomplice, was aware of and disregarded a substantial risk of C's lack of consent but that A, the principal, honestly but unreasonably believed that she consented. We express no opinion as to whether B could be properly convicted on such facts. *Compare* AS 11.16.110(3) [a person is legally accountable for the conduct of another constituting an offense if ... acting with the culpable mental state that is sufficient for the commission of the offense, the person causes an inno-

Bowell next argues that the jury instructions were inadequate in describing the culpable mental state necessary for a finding of accomplice liability to first-degree sexual assault. The jury was instructed that in order to find Russell Bowell guilty of first-degree sexual assault, it had to find:

As to Russell Scott Bowell:

1. That the event in question occurred at or near Fairbanks, in the Fourth Judicial District, State of Alaska, and on or about the 4th day of February, 1985;

2. That the defendant, James D. Thomas, knowingly engaged in sexual penetration with B.S.;

3. That the penetration occurred without the consent of B.S.;

4. That Russell Scott Bowell aided or abetted James D. Thomas in the sexual penetration; and

5. That James D. Thomas recklessly disregarded B.S.'s lack of consent to the sexual penetration.[4]

Bowell claims error because this instruction does not specify a mental state for Bowell's acts. Rather, the only mental state for the jury to consider under this instruction is whether or not Thomas recklessly disregarded B.S.'s nonconsent to intercourse.

■ Bowell is correct that this instruction is incomplete regarding the required *mens rea* for accomplice liability. Since he did not object to this instruction at trial, he must establish plain error in order to prevail. Alaska R.Crim.P. 47(b). We note that Bowell did more than fail to object to the instruction at trial. It was his counsel who suggested that the mental state as to Bowell should be that Thomas recklessly disregarded B.S.'s lack of consent to the intercourse. Under the totality of the circumstances, we are satisfied that no plain error occurred. We are also satisfied that the other instructions given, coupled with the parties' arguments, adequately present-

ed the issue to the jury. *See, e.g., Reynolds v. State,* 664 P.2d at 627–28. *See also Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) (single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge). The other instructions given informed the jury on accomplice liability:

An accomplice is one who in some manner, knowingly and with criminal intent, aids, abets, assists or participates in a criminal act.

A person need not commit every element of the offense in order to be guilty as an accomplice. However, it is necessary that he in some ways [sic] associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his actions to make it succeed....

"Aid and abet" means to help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or induce, counsel, or incite as to its commission.

Under the laws of Alaska a person need not directly commit each act constituting the offense charged to be guilty thereof. A person who, with intent to promote or facilitate the commission of the offense, aids or abets another in planning or committing the offense is as guilty as the person or persons who commit the offense personally....

Furthermore, the parties' arguments at closing both expressed the correct legal standard regarding Bowell's culpability. The prosecutor stated:

And then you have to consider, if you found these four things [establishing Thomas' guilt] beyond a reasonable doubt, whether you believe beyond a reasonable doubt that Mr. Bowell aided or abetted and that sexual penetration—in other words, did he know what was hap-

cent person or a person who lacks criminal responsibility to engage in the proscribed con-·duct] *with* AS 11.16.120(a)(2)(C) [in a prosecution for an offense in which legal accountability is based on the conduct of another person, it is

not a defense that the other person is not guilty of the offense].

**4.** Bowell does not complain of element no. 5 of the instruction on appeal. [*See* n. 3, *supra.*]

pening, was he in agreement with it, was it [sic] doing things to help it along, to make it possible for Mr. Thomas to do what he was doing, was he a part of it and was he a participant in the whole situation.

Bowell's counsel argued to the jury without objection by the state:

Now the law is going to be completely read to you. Under the law of the State of Alaska somebody can be guilty as a principal if he aids or abets, Okay? And if a person intends to promote or facilitate the commission of an offense, aids and abets—aids and abets, he is guilty as the person or persons who commit the offense.... In order to aid and abet another to commit a crime it is necessary that the defendant willfully associate himself in some way with the criminal avenger, that he willfully participated in something that he wishes to bring about, that he willfully seeks by some action to make it succeed.... You have to find that he intended to aid and abet Mr. Thomas. And a person acts intentionally with respect to a result when his conscious objective is to cause that result.

We conclude therefore, that Bowell has failed to establish plain error.

Bowell next argues that there was insufficient evidence to convict him of aiding and abetting first-degree sexual assault. Bowell stresses B.S.'s testimony that she would not have been able to escape Thomas' sexual assault even if Bowell had not been present. On review, we must view the evidence and the inferences that may be drawn therefrom in the light most favorable to the prosecution to determine whether there is substantial evidence to support the conviction against Bowell. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981). Substantial evidence is defined as such relevant evidence as is adequate to support the conclusion by a reasonable mind that there is no reasonable doubt as to Bowell's guilt. *Id.* at 453 (citations omitted).

■ Applying this standard, we are satisfied that there is sufficient evidence in the record to enable reasonable jurors to determine beyond a reasonable doubt that Bowell was guilty of aiding and abetting Thomas' sexual assault of B.S. B.S. testified that Thomas was speaking loudly enough for Bowell to hear when he said, "Little girls shouldn't be out hitchiking in the middle of the night [sic] unless they're asking for something." B.S. asked Bowell to stop and please let her out; Bowell did not stop. When Thomas asked Bowell for the gun, B.S. testified that Bowell retrieved the gun from the glove box, loaded it, and handed it to Thomas. According to B.S., Thomas told Bowell that when Thomas was finished with B.S., it was Bowell's turn. Bowell said, "Hurry up then." B.S. testified that Bowell assisted Thomas in the sexual assault by driving the car, without slowing the rate of speed, to prevent her escape.

We recognize that B.S. testified to a multiplicity of sexual assaults during the approximately three hours that she was in the company of Thomas and Bowell. Given B.S.'s testimony about her actions, and those of Thomas and Bowell, we are satisfied that a reasonable jury could conclude beyond a reasonable doubt that Bowell, at some point, was aware that Thomas was engaging in sexual intercourse with B.S. without her consent, and knowing that, he aided and abetted Thomas. The trial court did not err in denying Bowell's motion for a directed verdict of acquittal.

■ We will now briefly address Bowell's arguments regarding his sentence. A first offender convicted of first-degree sexual assault is subject to presumptive sentencing. AS 12.55.125(i). If the offense is a first felony conviction and the defendant possessed a fire arm, the presumptive term is ten years. *Id.* (i)(2). Judge Greene found that Bowell's passing a loaded fire arm to Thomas constituted "possession of a fire arm." Bowell argues that only Thomas possessed the fire arm in connection with the offense. *See, e.g., Dailey v. State,* 675 P.2d 657, 661 (Alaska App.1984). We disagree. Where an accomplice furnishes a fire arm to his principal in order to aid and abet a sexual assault, the trial court may properly find that

the accomplice possessed a fire arm for purposes of the enhanced presumptive term. AS 12.55.125(i)(2). Judge Greene's conclusion was not clearly erroneous. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgment of the superior court is AFFIRMED. The case is REMANDED for consideration of Bowell's motion for new trial.[5]

5. Bowell raises other issues which we briefly address. First, he contends that the trial court erred in concluding that it had no jurisdiction to consider his motion for new trial based upon newly discovered evidence filed on the same day that he filed his notice of appeal. The parties are in agreement that Judge Greene could have considered the motion and denied it without a remand from this court, but would have needed to request a remand in order to grant the motion. *See, e.g., State v. Salinas,* 362 P.2d 298, 301 (Alaska 1961). It is unnecessary for us to pursue this issue, however, because our affirmance of Bowell's conviction will permit the trial court to address his motion for new trial on remand.

Bowell also challenges Judge Greene's rejection of a mitigating factor that he committed the offense under some degree of duress, coercion, threat or compulsion, insufficient to constitute a complete defense but which significantly affected his conduct. AS 12.55.155(d)(3). Since Judge Greene's decision on this issue might be influenced by the so-called newly discovered evidence that Bowell seeks to present in support of his motion for a new trial, we will permit reconsideration of this issue on remand. *See, e.g., Hart v. State,* 702 P.2d 651 (Alaska App. 1985). *See also Bynum v. State,* 708 P.2d 1293 (Alaska App.1985); *Lee v. State,* 673 P.2d 892, 896 (Alaska App.1983).

Finally, Bowell appealed Judge Greene's imposition of consecutive sentences for kidnapping and first-degree assault. However, the lower court has since modified the sentence on appeal and Bowell has abandoned this issue.