Steven KNUTSON, Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Appellant,

v.

Steven KNUTSON, Appellee.

Ronald E. GUDMUNDSON, Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Appellant,

v.

Ronald E. GUDMUNDSON, Appellee.

Nos. A–1420, A–1421, A–1430 and A–1431.

Court of Appeals of Alaska.

May 8, 1987.

Pamela Cravez, Asst. Public Advocate, Brant McGee, Public Advocate, Anchorage, for appellant and appellee Knutson.

Paul E. Malin, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for appellant and appellee Gudmundson.

Maurice M. Richard and Mary Jane Sutliff, Asst. Dist. Attys., Victor C. Krumm, Dist. Atty., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for State.

Before COATS and SINGLETON, JJ., and WHITE, District Court Judge.[*]

OPINION

WHITE, District Court Judge, sitting by assignment.

After a joint trial, Steven Knutson and Ronald E. Gudmundson were convicted by a jury of wanton waste of a big game animal, a class A misdemeanor. AS 16.30.-010(a). The offense carries a mandatory minimum sentence of seven consecutive days' imprisonment and a fine of not less than $2,500. AS 16.30.010(b). District Court Judge John D. Mason imposed fines of $1,250 each, and sentenced each defendant to fifteen days' imprisonment, with all but three and one-half days suspended.

Knutson and Gudmundson appeal their convictions arguing that the court erred in rejecting their proposed jury instruction on omission liability. Knutson also appeals the court's denial of his pretrial motion for severance. The state appeals, contending that because the defendants each received half the mandatory minimum sentence, the sentences imposed are illegal. These cases have been consolidated on appeal. We affirm the convictions, but reverse the sentences.

In early September 1985, the Fish and Wildlife Protection Division of the Alaska State Troopers (AST) received information that hunters had illegally taken dall sheep on Sheep Mountain, an area closed to hunting; a confidential informant gave AST the license plate number of the car used by the hunters. On September 3, Trooper Joseph M. Campbell attempted unsuccessfully to contact the owner of the vehicle, Steven Knutson, at his home and workplace. The following day, Knutson contacted Trooper Campbell and spoke briefly with him at the Fish and Wildlife Protection office. Knutson then arranged to meet with Gudmundson and Trooper Campbell.

In a taped interview, Gudmundson and Knutson told Campbell that they had spot-

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

ted two rams on August 31 at Sheep Mountain. Knutson indicated that they had killed one ram and the other had gotten away. Gudmundson, with Knutson's help, drew a map indicating where they had abandoned the ram.

Knutson indicated that after the animal was killed, it was gutted. Since it was getting dark, they decided to leave the carcass on the mountain and return for it the next morning. They traveled east to a nearby lodge to celebrate. Later, as they drove back, in the direction of Sheep Mountain, Knutson and Gudmundson, for the first time, saw signs indicating that they had been hunting in a closed area. Knutson told Campbell that they were scared and, rather than retrieve the carcass, decided to return to Anchorage to figure out what to do.

Following this interview, Trooper Campbell traveled to Sheep Mountain and, using the map drawn by Gudmundson, was able to locate the carcass, which by that time was spoiled. On September 16, Trooper Campbell contacted Gudmundson at his home and asked him who had actually shot the ram. Gudmundson told him that they did not know who had shot it, but that he, Gudmundson, had claimed the kill. Gudmundson and Knutson were charged with wanton waste of a big game animal.

## I. SEVERANCE

### A. *Untimely Motion*

On the day of trial, prior to jury selection, Knutson moved for severance under Alaska Criminal Rule 14, arguing that if his case were severed, he would be able to call Gudmundson as a witness. The court denied Knutson's motion, noting that it was untimely, and finding that Knutson's and Gudmundson's initial statements to Trooper Campbell constituted a joint confession in which each defendant acquiesced to the statement of the other. The court also found that the second statement made by Gudmundson to the trooper did not implicate Knutson, but instead, exonerated him.

Criminal Rule 14 gives the court discretion to grant a severance. A trial court's decision to deny a motion to sever will be upheld absent an abuse of judicial discre-

tion and a showing of prejudice to the defendant. *Catlett v. State*, 585 P.2d 553, 556 (Alaska 1978).

Motions for severance must be raised prior to trial. Alaska R.Crim.P. 12(b)(4). Failure to make a timely motion for severance constitutes a waiver. Alaska R.Crim.P. 12(e). A trial court acts within its discretion when it denies a motion to sever filed on the first day of trial solely on the grounds of untimeliness. *Wortham v. State*, 689 P.2d 1133, 1136–39 (Alaska App. 1984); *but see Fox v. State*, 685 P.2d 1267, 1268–71 (Alaska App.1984) (trial court's refusal to consider the merits of pretrial motion filed after the omnibus hearing, but before the actual start of trial was an abuse of discretion); *see also Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977); *Davis v. United States*, 411 U.S. 233, 242, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973); 1 Wright, *Federal Practice and Procedure: Criminal 2d*, § 192–93 (1982).

In the present case, there appears to have been no good cause for the delay in bringing this motion. Statements elicited at trial indicate that the cases were consolidated at arraignment, but that defense counsel did not attempt to sever because negotiations continued up to the day before trial. Counsel did not believe that this case would go to trial. Moreover, Knutson's desire to call Gudmundson as a witness on his behalf is not the kind of prejudice that would justify relief from prejudicial joinder. *See Hawley v. State*, 614 P.2d 1349, 1360 (Alaska 1980).

We are satisfied that by waiting until the day of trial to move for severance, Knutson waived his ability to do so. We conclude that Judge Mason did not abuse his discretion by denying Knutson's motion for severance.

### B. *Interlocking Confessions*

Knutson argues that as a matter of constitutional necessity, severance was required under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476

(1968).[1] In *Bruton*, the Supreme Court held that the introduction of a codefendant's confession, inculpating Bruton, in a joint trial, when the codefendant did not take the stand, violated Bruton's right to confrontation under the sixth amendment. Alaska Appellate Courts have discussed the *Bruton* rule in several cases. *E.g., Quick v. State*, 599 P.2d 712 (Alaska 1979); *Benefield v. State*, 559 P.2d 91, 95 (Alaska 1977); *Lemon v. State*, 514 P.2d 1151, 1154–57 (Alaska 1973); *Mead v. State*, 504 P.2d 855, 857–60 (Alaska 1972). In *Benefield v. State*, the supreme court discussed an exception to the *Bruton* rule. In that case, the court held that a police officer's testimony about a codefendant's statement which was exculpatory to Benefield did not violate the Confrontation Clause. 559 P.2d at 95.

The United States Supreme Court in *Lee v. Illinois*, —— U.S. ——, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), addressed the concerns that arise when a codefendant's confession inculpates a defendant. It stated:

> The true danger inherent in this type of hearsay is, in fact, its selective reliability. As we have consistently recognized, a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself or divert attention to another. If those portions of the codefendant's purportedly "interlocking" statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are

not insignificant, the codefendant's confession may not be admitted.

*Id.* 106 S.Ct. at 2064–65.

In the present case, both defendants, in a joint interview, indicated that they had been hunting on Sheep Mountain, and that they had both fired in the direction of two sheep. Knutson indicated that they "got one and another one got away." Knutson also told Trooper Campbell that when they realized that they had been hunting in a closed area, they did not return to get the carcass. Trooper Campbell testified that in a later, separate conversation, Gudmundson indicated that they "both shot at it, but they don't know who actually killed it, that Mr. Gudmundson claimed it."

Gudmundson's statement was not an attempt to shift blame onto Knutson or to divert attention from himself. Gudmundson focused attention on himself by admitting that he claimed the animal. Moreover, Knutson's statements indicate joint action and lend reliability to Gudmundson's comment that they did not know who had actually killed the sheep. There is no real discrepancy between these statements. On the contrary, the confessions interlock significantly.

■■■ We agree with Judge Mason's conclusion that the recorded statement taken during the joint interview was an interlocking confession. Additionally, Judge Mason's conclusion that Gudmundson's later statement was not inculpatory when viewed under the totality of the circumstances is not error. Therefore, we conclude that Judge Mason did not err in refusing to find that *Bruton* required severance.

## II.  JURY INSTRUCTIONS

Knutson and Gudmundson contend that Judge Mason erred in rejecting their proposed instruction on omission liability.[2]

---

1.  The state argues that Knutson failed to preserve this issue for appeal because he did not renew his objection at the close of evidence. Since the severance motion was made on the day of trial and the court, at that time, decided that there was not a valid *Bruton* issue, we conclude that it was unnecessary for Knutson to

renew his objection in the middle of trial. *See United States v. Kaplan*, 554 F.2d 958, 965–66 (9th Cir.), *cert. denied, sub nom Dolwig v. U.S.*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

2.  Knutson and Gudmundson proposed the following instruction:

The crux of Gudmundson's and Knutson's argument is that a jury cannot convict a person of wanton waste of a big game animal without first finding, beyond a reasonable doubt, that the individual killed the animal.

The court rejected this argument, finding that a person who did not actually kill the animal could still be guilty of wanton waste and gave the following instruction:

> You are instructed that if two persons acting together both shoot at an animal at about the same time, with the intent of killing the animal, and the animal is killed, then both persons are responsible under AS 16.30.010(a), for killing the animal unless
>
> 1. It is clear which of the persons in fact killed the animal and that the other did not, or
>
> 2. One of the persons thereafter accepts responsibility for killing the animal and the other person reasonably believes he no longer has responsibility.

Alaska Statute 16.30.010 imposes a duty to salvage on a person who kills a big game animal. It provides:

> *Wanton waste of big game animals.* (a) It is a class A misdemeanor for a person who kills a big game animal to fail intentionally, knowingly, recklessly or with criminal negligence to salvage for human

consumption the edible meat of the animal.

Thus, the real issue is what is meant by a person who "kills a big game animal." Since the term "kill" means to "cause the death of," the question is one of causation. *Webster's Third New International Dictionary* 1242 (1969).[3]

■ As a threshold matter, it is important to address the question of whether or not statutes which provide for legal accountability, AS 11.16.100–.110, apply to AS 16.30.010.[4] Having reviewed the text of the applicable statutes, the commentary to the statutes, and the legislative history, we find no indication that the legislature intended to limit the application of AS 11.16.100 or AS 11.16.110 to Title 11 offenses. In addition, we see no reasons in law or in policy for restricting the application of AS 11.16.100–.110. Moreover, the definitional section of Title 16, in discussing terms relating to *mens rea*, makes specific reference to AS 11.81.900(a)(1)–(4). AS 16.30.030(2), (5), (6), (8). Therefore, we hold that the legal accountability statutes apply to fish and wildlife offenses.

Although Judge Mason refused to give a specific accomplice liability instruction, his instruction served to inform the jury of accomplice liability. As argued below by the state, Knutson and Gudmundson could

Liability for the commission of an offense may not be based on an omission unaccompanied by action unless a duty to perform the omitted act is otherwise imposed by law.

In order [sic] words, the duty to salvage the sheep specifically belongs to the killer of the sheep. Therefore, in order to convict a defendant of wanton waste, you must find that the defendant actually killed the sheep.

**3.** W. LaFave & A. Scott *Handbook of Criminal Law*, § 35 (1972), discusses criminal causation when two people try to kill the same person:

Of course, in all these cases involving two assailants, if A and X are not acting independently, but are working together to cause B's death, one is as guilty as the other on general principles concerning accomplices in crime, no matter which one actually applies the coup de grace.

LaFave & Scott, *supra*, at 250 (footnote omitted).

**4.** These statutes provide:

*Legal accountability based upon conduct.* A person is guilty of an offense if it is committed by the person's own conduct or by the conduct of another for which the person is legally accountable under AS 11.16.110, or by both.

AS 11.16.100.

*Legal accountability based upon the conduct of another: Complicity.* A person is legally accountable for the conduct of another constituting an offense if

(1) the person is made legally accountable by a provision of law defining the offense;

(2) with intent to promote or facilitate the commission of the offense, the person

(A) solicits the other to commit the offense; or

(B) aids or abets the other in planning or committing the offense; or

(3) acting with the culpable mental state that is sufficient for the commission of the offense, the person causes an innocent person or a person who lacks criminal responsibility to engage in the proscribed conduct.

AS 11.16.110.

have been held liable for each other's acts under AS 11.16.110 which imposes legal accountability based on the conduct of another.

In *Bowell v. State*, 728 P.2d 1220 (Alaska App.1986), this court quoted the Commentary to the Model Penal Code in a discussion of the *mens rea* required for accomplice liability under AS 11.16.110:

> Subsection (3)(a) requires that the actor have the purpose of promoting or facilitating the commission of the offense, *i.e.*, that he have as his conscious objective the bringing about of conduct that the Code has declared to be criminal. This is not to say that he must know of the criminality of the conduct; there is no more reason here to require knowledge of the criminal law than there is with the principal actor. But he must have the purpose to promote or facilitate the particular conduct that forms the basis for the charge, and thus he will not be liable for conduct that does not fall within this purpose.

728 P.2d at 1222, *quoting*, ALI, *Model Penal Code and Commentaries*, Part 1 § 2.06 at 310–11 (1985).

Here, the evidence was uncontroverted that Knutson and Gudmundson shared a common purpose; to shoot sheep, although they may have been unaware of its illegality. Upon sighting two sheep, both fired, killing only one. It was also undisputed that once Knutson and Gudmundson discovered that they had hunted in a closed area, they agreed to abandon the carcass.

■ We find that the instruction given, however inartfully worded and with no explanation of the proximate cause analysis which supports it, was consistent with a theory of accomplice liability. Such a theory was amply supported by the record in this case.[5] We conclude that Knutson and Gudmundson could be convicted of wanton waste under an accomplice liability theory and that the factfinder did not have to first find that either one of them had actually killed the animal.

**5.** It is important to stress that neither Knutson nor Gudmundson objected to the specific instruction given. We do not, by this holding that

## III. SENTENCE APPEAL

The state has appealed the sentence imposed in these cases as illegal given the mandate of AS 16.30.010, which provides:

> (b) If a person is convicted of violating this section and in the course of that violation failed to salvage from a big game animal at least the hind quarters as far as the distal joint of the tibia-fibula (stifle joint), the court shall impose a sentence of imprisonment of not less than seven consecutive days and a fine of not less than $2,500.

> (c) The imposition or execution of the minimum sentence prescribed in (b) of this section may not be suspended under AS 12.55.080 or 12.55.085. The minimum sentence prescribed in (b) of this section may not be reduced.

Judge Mason, over the state's objection, determined that under the facts of this case, the legislative intent behind the enactment would be served by splitting the mandatory minimum jail term and fine between Knutson and Gudmundson.

The state contends that because the amount of unsuspended jail time is less than the minimum required by the legislature, the sentences are illegal. The state further contends that because the sentences are illegal, double jeopardy would not preclude resentencing Knutson and Gudmundson to the mandatory minimum sentences.

Knutson and Gudmundson argue that because the state has brought its sentence appeals under Appellate Rule 215, this court may disapprove the sentences as too lenient, but cannot increase the sentences. *See* AS 22.07.020(d). Knutson and Gudmundson further contend that since the state did not file a petition for review, it has waived its right to argue for correction of the sentences.

■ Judge Mason's determination that the mandatory minimum sentence should be halved is unsupported by legal authori-

it was not error to so instruct the jury, intend to give approval to the instruction.

ty. Thus, the state's sentence appeal can be treated, on appellate review, as the equivalent of a petition for review under Appellate Rule 402(b)(2) and (3). *State v. Price,* 715 P.2d 1183, 1185–86 (Alaska App. 1986). The double jeopardy clauses of the United States and Alaska Constitutions do not preclude us from vacating the sentences, and ordering the sentencing judge to impose the full mandatory minimum sentence and fine on both Knutson and Gudmundson. *State v. LaPorte,* 672 P.2d 466, 468 (Alaska App.1983).

Therefore, we AFFIRM the convictions, but VACATE the sentences. The case is REMANDED for resentencing for the imposition of the full mandatory minimum sentence and fine on both Knutson and Gudmundson.

BRYNER, C.J., not participating.