**Douglas B. VADEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1581.**

Court of Appeals of Alaska.

Sept. 15, 1987.

Rehearing Denied Oct. 7, 1987.

---

Daniel W. Allan, Anchorage, for appellant.

Eugene B. Cyrus, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Palmer, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

### FACTS

Douglas B. Vaden, a professional hunting guide, was convicted in a jury trial of eleven hunting violations involving the illegal taking and subsequent transportation of game. A client of Vaden's, John Snell, was an undercover agent for the State Division of Fish and Wildlife Protection. Snell shot four foxes out-of-season from Vaden's airplane. Three of the foxes were transported back to the guide camp and ultimately on to Anchorage.[1]

Vaden essentially raises three issues on appeal. First, he claims the defense of legal impossibility to the aiding and abetting convictions. If there is no "crime" committed by the principal, he argues, there can be no accomplice liability. This argument relates to the four counts of aiding and abetting taking four foxes airborne in violation of former 5 Alaska Administrative Code (AAC) 81.072(4), and four additional counts of taking the same four foxes out-of-season in violation of former 5 AAC 81.330(4). Next, Vaden claims that he did not transport illegally-taken game because the foxes were not taken illegally.

---

1. Vaden was convicted of violations of former 5 Alaska Administrative Code (AAC) 81.072(4), taking game from a mechanical vehicle; former 5 AAC 81.140(c), knowingly transporting game taken in violation of Title 16 or regulations promulgated under Title 16; former 5 AAC 81.-330(4), hunting fox during a closed season.

This argument relates to three counts of unlawfully possessing and transporting three of the illegally-taken foxes. Finally, Vaden asserts that the government's conduct in this case was so outrageous that due process requires dismissal of the case. We affirm.

In *Knutson v. State*, 736 P.2d 775 (Alaska App.1987), we concluded that AS 11.16.110, which provides for legal accountability of accomplices, applied to fish and game offenses charged under Title 16. Alaska Statute 11.16.110 provides:

*Legal accountability based upon the conduct of another: Complicity.* A person is legally accountable for the conduct of another constituting an offense if

.   .   .   .   .

(2) with intent to promote or facilitate the offense, the person ...

(B) aids or abets the other in planning or committing the offense....

Under this statute, Vaden could be prosecuted for aiding another person in committing a game violation. Vaden's argument, however, is that Snell did not commit any game violations because Snell was authorized by the authorities to engage in what would normally be illegal conduct necessary to carry out his undercover duties. Vaden argues that since Snell committed no crime, Vaden could not be convicted of aiding Snell in illegally taking or illegally transporting that game. The state points to AS 11.16.120 and argues that this statute permits it to prosecute Vaden even if Snell's acts did not constitute a crime because they were authorized by the state. Alaska Statute 11.16.120 provides, in pertinent part:

*Exemptions to legal accountability for conduct of another.*

(a) In a prosecution for an offense in which legal accountability is based on the conduct of another person ...

(2) *it is not a defense that*

(A) *the other person has not been prosecuted for or convicted of an offense* based upon the conduct in question ...; [or]

(C) *the other person is not guilty* of the offense

.   .   .   .

(Emphasis added.)

We have examined several sources in an attempt to deal with the issue of whether an accessory can be prosecuted if the principal has not committed a crime or has a complete defense to the crime. *See Model Penal Code* Part 1, Art. 2 § 2.06(7) (1985); G. Fletcher, *Rethinking Criminal Law* 642–43 (1978); R. Perkins & R. Boyce, *Criminal Law* 761–64 (3d ed. 1982); 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.8(c) at 159–61 (1986). There appear to be few cases in this area and the commentators appear to have different ways of approaching this issue. However, we believe that Vaden could be prosecuted under the facts of this case.

The first question, as we see it, is to determine whether a crime took place. To give a simple example, if Snell shot a dummy fox, no crime would have been committed. Hence, Vaden could not be prosecuted as an accessory regardless of his actions or his intent. But in this case, we think it is clear that Snell committed the offenses: he shot the foxes from an aircraft and during a closed season. Snell had a defense of justification, however. He was authorized to commit the crimes as part of his undercover assignment.

The next question is whether Vaden should be able to raise Snell's defense of justification, or whether we should hold that the defense was one which only Snell could raise. Vaden knew that Snell shot the foxes illegally, yet he still transported them. We see no reason why Vaden should have a legal justification in this case. Therefore, we hold that Vaden could not raise Snell's defense of justification. The fact that Snell might have a defense to the crime should not excuse Vaden. This holding seems to be consistent with and authorized by AS 11.16.120.

The real issue in this case, and the one upon which this court is divided, is a public policy issue: should we allow the state to convict Vaden as an accessory to a

crime where the principal was a government agent? Vaden argues that his convictions violate the due process clauses of the United States and Alaska Constitutions. Where the undercover agent commits the crime and the defendant is charged as an accessory, there is a clear and obvious potential for overreaching by the government. We believe, however, that any government overreaching is adequately covered by the defense of entrapment. Alaska Statute 11.81.450 provides:

> *Entrapment.* In any prosecution for an offense, it is an affirmative defense that, in order to obtain evidence of the commission of an offense, a public law enforcement official or a person working in cooperation with the official induced the defendant to commit the offense by persuasion or inducement as would be effective to persuade an average person, other than one who is ready and willing, to commit the offense. Inducement or persuasion which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit does not constitute entrapment.

The defense of entrapment has been further refined by the supreme court in *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978), to focus on whether "[police] conduct falls below an acceptable standard for the fair and honorable administration of justice."

Vaden brought a pretrial motion to dismiss, alleging entrapment and a violation of his due process rights. Snell testified at the pretrial hearing that it was Vaden's initial idea to shoot the foxes. Snell also stated that he shot the foxes under Vaden's specific instructions. Thereafter, District Court Judge John Bosshard, III, denied the motion to dismiss. Later, at trial, Snell indicated that he merely followed Vaden's instructions and that Vaden showed him how to shoot out of the airplane. Vaden testified at trial, however, that Snell initiated the idea to shoot the foxes and that Vaden agreed only because he weakened.

Judges and juries are constantly called upon to resolve credibility questions. This case is no different. Under these facts, Judge Bosshard could conclude that Vaden had not established an entrapment defense. *See Yates v. State*, 681 P.2d 1362, 1364 (Alaska App.1984) (entrapment an issue for the court, not the jury).

In conclusion, although we believe that convicting Vaden as an accessory, when the principal was an undercover agent for the government, is a cause for concern, we believe that the defense of entrapment provides an adequate remedy for this type of case. Therefore, we conclude that the trial court did not err in finding that Vaden did not establish entrapment in this case and in concluding that the government's actions did not violate Vaden's right to due process under the United States or Alaska Constitutions. We also conclude that the trial court did not err in failing to give Vaden's proposed instructions and in concluding that Vaden could properly be convicted as an accessory in this case.

The conviction is AFFIRMED.

SINGLETON, J., concurs.

BRYNER, C.J., dissents.

SINGLETON, Judge, concurring.

I agree with Judge Coats' resolution of the issues in this case. Vaden contends that he could not have aided and abetted Snell in committing an unlawful act if Snell's act (shooting the foxes) was lawful. It is not necessary, in my view, to explore the possible criminal liability of an offender who uses an "innocent agent" to accomplish his offense where the "innocent agent" is an undercover police officer because it seems clear to me that Snell's act was not lawful and that, therefore, Vaden could be prosecuted for aiding and abetting him.

Under Alaska law, no one may take fish or game unless expressly authorized to do so by a statute or regulation. *State v. Eluska*, 724 P.2d 514, 515 (Alaska 1986). Neither the Board of Fish and Game nor the executive branch of government can orally authorize the taking of game. *See State v. Tanana Valley Sportsmen's Ass'n*, 583 P.2d 854, 858 (Alaska 1978). Vaden has not pointed to any regulation or statute expressly authorizing Snell, or un-

dercover officers in general, to shoot foxes. Consequently, Snell's shooting of the fox was illegal.

Judge Coats may be suggesting, in *dicta*, that Snell's action might have been excusable under AS 11.81.420.[1] The applicability of this section has not been briefed, and I have grave reservations regarding the question. It appears clear to me that Snell's act was not authorized by law or by a judicial decree, judgment, or order. AS 11.81.420(a). It is possible that Snell reasonably believed that his conduct was required or authorized in order to assist peace officers (*i.e.*, Fish and Game officials) in the performance of their duties notwithstanding that those officials exceeded their authority in permitting him to kill animals. AS 11.81.420(b)(2). *But cf. Eluska*, 724 P.2d at 515 (refusing to recognize statutory defense permitting taking of animals not specifically authorized by Fish and Game regulations). It is not necessary to pursue this issue further, however, because I agree with Judge Coats that if Snell has a defense under this section, it is a personal defense akin to duress or entrapment which would not insulate an aider or abettor from liability. *See, e.g., United States v. Azadian*, 436 F.2d 81 (9th Cir.1971) (perpetrator of crime of bribing official ac-

quitted on ground of entrapment; accessory convicted); *State v. Harvey*, 303 Or. 351, 736 P.2d 191 (1987) (perpetrator's defense of duress does not insulate instigator from criminal liability).

I also agree that Vaden cannot prevail on a theory of entrapment. In order to show entrapment, the defendant must establish two steps: that the police engaged in (1) activities which were calculated to seduce or coerce people, who are not otherwise motivated to commit crimes; and (2) the police activities constituted unconscionable conduct; *Pascu v. State*, 577 P.2d 1064, 1066–67 (Alaska 1978). Unless the first step is satisfied, the second is never reached. *Anchorage v. Flanagan*, 649 P.2d 957 (Alaska App.1982). Under the subjective theory of entrapment, the focus is on the defendant and whether the police seduced or coerced him. Under the objective theory, the court looks beyond the immediate parties to the transaction and asks whether the police conduct would be likely to seduce or coerce others ("average" people) into criminal behavior that they would not otherwise commit. In the absence of seduction or coercion, police conduct, no matter how unconscionable, cannot constitute entrapment. *Flanagan*, 649 P.2d at 961–62.[2]

---

1. Alaska Statute 11.81.420 provides:

    (a) Unless inconsistent with AS 11.81.320–11.81.410, conduct which would otherwise constitute an offense is justified when it is required or authorized by law or by a judicial decree, judgment, or order.

    (b) The justification afforded by this section also applies when

(1) the person reasonably believes the conduct to be required or authorized by a decree, judgment, or order of a court of competent jurisdiction or in the lawful execution of legal process, notwithstanding lack of jurisdiction of the court or defect in the legal process; or

(2) the person reasonably believes the conduct to be required or authorized to assist a peace officer in the performance of the officer's duties, notwithstanding that the officer exceeded the officer's authority.

2. Chief Judge Bryner's dissent apparently confuses an entrapment defense for Vaden with a necessity defense for Snell. I agree that Snell had no necessity defense, *i.e.*, his shooting the foxes would not appear to be a "lesser evil" than not shooting them would have been. *Compare*

*Nelson v. State*, 597 P.2d 977 (Alaska 1979) (describing the necessity defense in terms of the lesser of two evils). I assume, for purposes of this case, that Snell acted illegally in shooting the foxes. I am convinced, however, that Snell's illegal conduct did not seduce or coerce the conduct of Vaden. The jury had to have found that Vaden's conduct constituted aiding and abetting Snell. It is important to stress that Vaden's liability is not altogether "vicarious," *i.e.*, resulting solely from his status as an employer or principal. The *actus reus* of an accomplice's offense involves conduct (*i.e.*, aiding and abetting) different from the perpetrator's conduct (*i.e.*, firing the gun which resulted in the foxes' death). Vaden is being prosecuted for his conduct, not Snell's. As we have seen, a finding of "entrapment" involves a two-step process: (1) we must identify specific behavior by undercover police officers, or other agents, of a seductive or coercive nature likely to involve others in criminal behavior and (2) where such behavior exists, we must evaluate it to determine whether it falls below an acceptable standard for the fair and honorable administration of justice. *Pascu*, 577 P.2d at 1067. Since Snell

My concern with Judge Coats' opinion may involve too broad a reading; I infer a conclusion that in the absence of entrapment, unconscionable police conduct can never justify dismissal of a charge. We reserved this question in *Flanagan*, 649 P.2d at 963. While I would not foreclose the possibility of recognizing a defense of this kind in an appropriate case, I would adhere to *Flanagan* and refuse to recognize such a defense in the absence of outrageous police conduct "shocking the universal sense of justice and violating the concept of fundamental fairness." *Id.* at 963. I also think that such a defense would, in effect, involve a prophylactic rule intended by this court to deter such behavior and, as such, should meet the test for prophylactic rules adopted by the Alaska Supreme Court in *Copelin* and *Sundberg*. *See, e.g., Copelin v. State,* 659 P.2d 1206, 1214–15 (Alaska 1983); *State v. Sundberg,* 611 P.2d 44 (Alaska 1980). While *Copelin* and *Sundberg* deal with a prophylactic rule involving suppression of evidence, it seems to me that similar considerations should govern prophylactic rules requiring dismissal of charges. With these considerations in mind, it is clear to me that Vaden should not prevail since the need to deter Snell, and those similarly situated, from engaging in such behavior, would not appear to outweigh the need to prosecute Vaden, and those similarly situated, for their criminal conduct.

Snell's willingness to shoot foxes does not appear to me to be the kind of outrageous police conduct warranting a prophylactic rule of dismissal. While one could conceive of overzealous Fish and Game officers slaughtering the animals they have sworn to protect in a misguided effort to identify lawless hunting guides, it does not appear on this record that killing

of animals by law enforcement officers engaged in undercover activity is widespread. Nor does it appear that Snell set out with the intent to kill animals, though the possibility that he would kill them was certainly foreseeable. Under the circumstances, I would not establish a prophylactic rule of dismissal. *Sundberg,* 611 P.2d at 50–53.

BRYNER, Chief Judge, dissenting.

I agree with Judges Coats and Singleton in rejecting Vaden's assertion that his conviction was barred because no offense was actually committed. I would, however, find that Snell's conduct in this case "[fell] below an acceptable standard for the fair and honorable administration of justice." *Pascu v. State,* 577 P.2d 1064, 1067 (Alaska 1978). Vaden's conviction should therefore be reversed.

The state's effort to ferret out crime consisted of Snell's shooting foxes as a means of convicting Vaden vicariously for the shooting of those very same foxes. All of Vaden's convictions stemmed directly from the shooting of foxes by Snell. The evil committed by the state's agent was thus plainly equivalent to, or greater than, the evil for which Vaden was convicted. Under these peculiar circumstances, I do not believe Vaden's conviction can properly stand.

The state, of course, attempts to characterize Snell's conduct as being necessary in order to secure evidence of Vaden's participation in an ongoing pattern of more serious fish and game offenses. This explanation would, in my view, be persuasive with respect to charges involving additional, more serious crimes; in my view *Pascu* would not have precluded Vaden's conviction for any such additional charges.[1] In fact, however, Vaden was acquitted of all charges except those stemming directly

---

did not engage in behavior likely to seduce or coerce Vaden's conduct, we never reach the second step. *Flanagan,* 649 P.2d at 962–63.

Entrapment, even under the objective formulation utilized in Alaska, addresses some, but not all, of the potential problems associated with the use of undercover officers as agents provocateurs. While I would not rule out recognition of a broader defense in an appropriate case, I think it confuses the issue to confound

such a new defense with entrapment. For reasons set out in the text of this decision, I do not believe that this case is appropriate for establishing an expanded defense.

1. Similarly, I would not have precluded the state from prosecuting and convicting Vaden for the crime of solicitation, the commission of which would not have been dependent upon Snell's shooting of the foxes.

from Snell's shooting of the foxes. This outcome precludes Snell's conduct from being regarded as a lesser evil that was necessary to accomplish some greater good.

I therefore dissent.