Arthur W. ECHOLS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3307.

Court of Appeals of Alaska.

Oct. 4, 1991.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS,* Superior Court Judge.

## OPINION

COATS, Judge.

Arthur W. Echols was convicted, following a jury trial, of assault in the first degree, a class A felony. AS 11.41.200. Echols appeals, arguing that Superior Court Judge Mark C. Rowland did not properly charge the jury on the elements of her offense. We agree and reverse Echols' conviction.

Arthur Echols was indicted based on an incident which occurred when her husband, Melvin J. Echols, beat the Echols' fourteen-year-old daughter, T.E., with an extension cord. The grand jury charged Melvin Echols with assault in the first degree based upon this incident, along with seven counts of sexual abuse of his two daughters.[1]

T.E. testified that on Friday, November 4, 1983, while Arthur Echols and her four

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Arthur Echols and Melvin Echols were tried in a joint trial. The jury ultimately found Melvin Echols guilty of assault in the first degree and of sexually abusing T.E. Arthur Echols has argued that the trial court erred in refusing to sever her trial from that of her husband. Because of our disposition of this case, it is unnecessary for us to decide this issue.

other children were out of the house and Melvin was asleep, T.E. went to the kitchen and took some cookies. T.E. was not allowed in the kitchen. Her mother came home, finding T.E. in the kitchen. Echols went downstairs for "a second" to where Melvin slept. The two of them came back to the kitchen. Melvin screamed at T.E., punched and slapped her, and threw her to the floor. He left the room briefly but returned with an extension cord. He then proceeded to beat T.E. with the cord.

T.E. testified that her mother was in the kitchen washing dishes while her father beat her. The beating lasted five or ten minutes. At some point, Echols told her husband that she saw blood. Melvin continued to beat T.E. for a few minutes and then stopped.

After the beating, T.E. took a bath and cleaned herself up. She then left the house through a second floor window and went to a friend's house where she got on the school bus. After discovering she was gone, Arthur Echols caught up with the school bus and took T.E. home. She gave her breakfast and told her she was not going to school that day. Melvin beat T.E. again later that day and during the weekend.

T.E. returned to school on Monday, November 7, 1983. She reported to her teacher that her father had beaten her. The teachers and the school nurse observed scars and fresh wounds on T.E.'s back, and contacted the Department of Family and Youth Services (DFYS). T.E. was placed in state custody and has not lived with her parents since that time.

The state charged Arthur Echols with assault in the first degree under AS 11.16.-110(2), based upon her solicitation of Melvin Echols to commit the assault, a violation of AS 11.41.200(a)(1).[2] Alaska Statute

---

**2.** Alaska Statute 11.41.200(a)(1) provides: "A person commits the crime of assault in the first degree if that person recklessly causes serious physical injury to another by means of a dangerous instrument."

**3.** The culpable mental state of "intent" is defined as follows:

AS 11.81.900. Definitions.

---

11.16.110(2) provides that one is legally accountable for conduct of another if: "with intent to promote or facilitate the commission of the offense, the person (A) solicits the other to commit the offense; or (B) aids or abets the other in planning or committing the offense."

In analyzing AS 11.16.110, we start with the fact that the statute requires the accomplice to act *"with intent* to promote or facilitate the commission of the *offense"* (emphasis supplied).[3] The plain language of the statute seems to indicate that the accomplice must intend the commission of the particular crime charged. We have looked at the legislative history of AS 11.-16.110 in order to determine the legislative intent behind this statute. It appears from the tentative draft of the Alaska Criminal Code revision that the legislature intended to codify prior Alaska law in passing AS 11.16.110. The commentary to the tentative draft states:

> Subsection (2) codifies the current case law that one is liable as a traditional "accomplice" only if he acts "with intent to promote or facilitate the commission of the offense". *Tarneff [sic] v. State,* 512 P.2d 923, 928 (AK 1973), citing *Thomas v. State,* 391 P.2d 18, 25 (AK 1964). Acting with that intent, the defendant must, under the Revised Code, ... "solicit or command" the offense[.]

Alaska Criminal Code Revision Part II, at 31 (Tent.Draft 1977). In *Tarnef,* the court stated: "It is well established at common law and in Alaska that a person cannot be convicted of 'aiding and abetting' a crime unless it is shown that he had the specific criminal intent to bring about the illegal end." *Tarnef v. State,* 512 P.2d 923, 928 (Alaska 1973). The supreme court later explained this language as follows:

> (a) For purposes of this title, unless the context requires otherwise,
>
> (1) a person acts "intentionally" with respect to a result described by a provision of law defining an offense when the person's conscious objective is to cause that result; when intentionally causing a particular result is an element of an offense, that intent need not be the person's only objective....

The significance of this formulation of the mens rea requirement was not fully explicated in *Tarnef.* Nevertheless, this language, which was addressed to *Mahle*'s [*Mahle v. State*, 371 P.2d 21 (Alaska 1962)] general "criminal intent" seems to indicate that "knowledge," would not satisfy the mental aspect of accomplice liability. Rather, the individual must also have had the specific criminal intent to bring about the illegal end.

*Hensel v. State*, 604 P.2d 222, 233–34 (Alaska 1979).

It therefore appears that in enacting AS 11.16.110 the legislature intended to codify prior law, and that under prior law a person could not be convicted of aiding and abetting a crime unless the state showed "the specific criminal intent to bring about the illegal end."

Arthur Echols argued that AS 11.16.-110(2), the accomplice liability statute, required the state to prove that she intended T.E. to suffer serious physical injury in order to prove her guilt as an accomplice of assault in the first degree.[4] Judge Rowland relied on this court's decision in *Bowell v. State*, 728 P.2d 1220 (Alaska App. 1986), and concluded that, in order to be guilty as an accomplice to assault in the first degree, Arthur Echols needed only to have acted recklessly regarding the results of Melvin Echols' conduct.

In *Bowell*, the defendant was convicted as an accomplice of a first-degree sexual assault which was committed by Thomas. We stated:

In other words, in order to convict Bowell as an accomplice of Thomas' first-degree sexual assault of B.S., the state was required to prove that Bowell knew that Thomas intended to engage in sexual intercourse with B.S., that he intentionally engaged in conduct facilitating Thomas' efforts, and that at the time he aided Thomas, he recklessly disregarded B.S.'s lack of consent to Thomas' overtures.

*Id.* at 1223. In reaching this conclusion, we relied on the provisions establishing accomplice liability in the Model Penal Code, which is one of the sources for our revised criminal code. However, as Echols points out, our reliance on the Model Penal Code is problematical. The Model Penal Code contains a provision which reads as follows:

4. Echols' attorney proposed the following instruction:

A person is legally accountable for the conduct of another person constituting an offense if, with intent to promote or facilitate the commission of the offense, the person solicits the other person to commit the offense or aids or abets the other person in planning or committing the offense.

In order to establish that Arthur W. Echols is legally accountable in this case, the State must prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Anchorage, Alaska, and on or about November 4, 1983;

Second, that Arthur W. Echols acted with intent to promote or facilitate the commission of the offense; and

Third, that Arthur W. Echols solicited Melvin Echols to commit the offense or aided or abetted Melvin Echols in planning or committing the offense.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you shall find the defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you shall find the defendant not guilty.

The court gave the following instruction:

On Count VIII for Mrs. Echols the State must prove she is legally accountable for the alleged conduct of Mr. Echols. A person is legally accountable for the conduct of another person constituting an offense, if, with intent to promote or facilitate the commission of the offense, the person solicits the other person to commit the offense.

In order to establish that Mrs. Echols is legally accountable on Count VIII in this case, the State must prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Anchorage on or about November 4, 1983;

Second, that Mrs. Echols acted with intent to promote or facilitate the commission of Mr. Echols' offense by soliciting his conduct;

Third, that the defendant, Mrs. Echols, solicited Mr. Echols to commit the offense;

Fourth, that Mrs. Echols knew Mr. Echols was going to engage in the conduct in which he engaged; and

Fifth, that she acted recklessly regarding the results of Mr. Echols' conduct.

When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

Model Penal Code § 2.06(4) (1962). This section of the Model Penal Code, if it were part of the Alaska Criminal Code, would support the state's position in this appeal. However, there is no similar provision in Alaska's revised criminal code.

The problem of when an accomplice can be held accountable for the assistance or encouragement of reckless or negligent conduct is discussed in 2 W. LaFave and A. Scott, *Substantive Criminal Law* § 6.7(e) (1986). The text contains the following hypothetical and discussion:

> (e) **Assistance or Encouragement to Reckless or Negligent Conduct.** Assume that *A,* the owner of a car, permits *B,* who *A* knows is intoxicated, to operate his car on the public highways, and that as a consequence *B* is involved in an accident which causes the death of *C.* Under principles of accomplice liability, may *A* be viewed as an accomplice to *B*'s criminal-negligence involuntary manslaughter? In considering this question it is useful to take account once again of the teaching of *United States v. Peoni* [100 F.2d 401 (2 Cir.1938)] that the traditional definitions of accomplice liability "have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed."
>
> As we have seen, the *Peoni* rule is today generally accepted to mean that one does not become an accomplice by an intentional act of assistance or encouragement merely because he knows that such act will facilitate a crime. If this is so, then does it not follow that one also does not become an accomplice by an

intentional act of assistance or encouragement merely because he knows that such act *might* facilitate a crime? That is, in the example given above, how can *A* be an accomplice as to *C*'s death when *A* did not give the aid or encouragement with an intent that such a result ensue?

*Id.* at 149 (footnotes omitted).

LaFave continues: "The cases in this area are generally in a state of confusion.... However, it has been held with some frequency that accomplice liability exists under the circumstances stated." *Id.* (footnotes omitted). LaFave then states that "[t]his theory of accomplice liability has been rejected by some courts, and it would seem inapplicable under many of the modern accomplice statutes requiring an actual intent to assist the commission of a crime." *Id.* at 150–51 (footnotes omitted).

LaFave seems to suggest that accomplice liability for reckless conduct is permitted under statutes which have a specific provision similar to Model Penal Code § 2.06(4), quoted above. *Id.* at 150 n. 110. When LaFave states that accomplice liability "would seem inapplicable under many of the modern accomplice statutes requiring an actual intent to assist the commission of a crime," it appears he is referring to statutes such as AS 11.16.110.

LaFave concludes with an argument for charging the accomplice directly as a principal. He states:

> This is not to say, however, to return to the example of *A* permitting *B* to drive his car, that *A* will necessarily escape liability. *A* could well be found guilty of criminal-negligence involuntary manslaughter without being declared an accomplice of *B....*
>
> Indeed, this approach is to be much preferred over the accomplice liability theory, for the latter is not limited by the legal cause requirement and thus could easily be extended to all forms of assistance or encouragement to negligent or reckless conduct.

*Id.* at 151–52 (footnotes omitted).

Based upon the plain language of AS 11.16.110, the legislative history of that

statute, and the analysis in LaFave and Scott, we conclude that the trial court erred in instructing the jury that it could convict Arthur Echols if she acted recklessly regarding the results of Melvin Echols' conduct. Under our analysis, AS 11.16.110 allows the state to convict Arthur Echols for the crime of assault in the first degree only if it proves that she intended "to promote or facilitate the commission of the offense." In other words, Arthur Echols cannot be convicted as an accomplice for acting recklessly as to whether T.E. might suffer serious physical injury. In order to convict her of assault in the first degree as an accomplice, the state must show that when she solicited Melvin Echols to commit the offense she intended that T.E. suffer serious physical injury. We accordingly REVERSE Echols' conviction.[5]

BRYNER, C.J., concurs.

MANNHEIMER, J., not participating.

BRYNER, Chief Judge, concurring.

I join in the court's decision construing AS 11.16.110(2) to mean that Echols could be convicted as an accomplice only if she intended to inflict serious physical injury on T.E. I wish to emphasize, however, that Echols could properly have been charged with first-degree assault as a principal rather than as an accomplice. *See* 2 W. LaFave and A. Scott, *Substantive Criminal Law* § 6.7(e) at 151–52 (1986).

Had the state charged Echols as a principal, proof of specific intent would not have been necessary. Echols would have been subject to conviction if the jury found that she recklessly caused serious physical injury to T.E. by means of a dangerous instrument. AS 11.41.200(a)(1). In context, this would have required the state to prove (1) that T.E.'s injuries were caused by Echols—that is, that Echols' request to her husband to discipline T.E. was a substantial

factor in bringing about the child's injuries,[1] and (2) that, in making the request, Echols acted recklessly—in other words, that, in requesting her husband to discipline T.E., Echols consciously disregarded a substantial and unjustifiable risk that her husband would inflict serious physical injuries on T.E. by means of a dangerous instrument. *See* AS 11.81.900(a)(3).

The common law distinction between principals and accessories has, of course, been discarded for most purposes. *See Rice v. State*, 589 P.2d 419 (Alaska 1979); *Tarnef v. State*, 512 P.2d 923, 928 (Alaska 1973). Accordingly, it would normally be unnecessary for the state to specify whether Echols was charged as a principal or as an accomplice. In the present case, however, the state relied exclusively on the accomplice liability theory at trial, and that was the only theory addressed in the trial court's instructions.[2] Under these circumstances, the trial court's failure to give appropriate instructions on the culpable mental state for accomplice liability was not harmless error, even though it is conceivable that Echols might have been convicted as a principal without proof that she intended T.E. to be seriously injured.

---

5. To the extent that *Bowell v. State*, 728 P.2d 1220 (Alaska App.1986), is inconsistent with this result, we overrule that case.

1. *See State v. Malone*, —— P.2d ——, Op. No. 1155 (Alaska App., September 6, 1991).

2. Moreover, the state apparently relied exclusively on the accomplice liability theory in securing Echols' indictment. To convict Echols as a principal would thus have posed serious problems with variance. *See Michael v. State*, 805 P.2d 371 (Alaska 1991).