**Joseph Michael SCOTT, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6028.

Court of Appeals of Alaska.

Dec. 13, 1996.

Vernon A. Keller and Mary P. Treiber, Ketchikan, for Appellant.

Ben M. Herren, District Attorney, Ketchikan, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

MANNHEIMER, Judge.

Joseph Michael Scott pleaded no contest to attempted first-degree sexual abuse of a minor (attempting to engage in sexual penetration with a child under the age of 13). The sentencing judge ordered Scott to participate in sex offender treatment while in

prison. Scott contends that there was no factual basis for the judge's decision to order sex offender treatment because, at sentencing, Scott continued to assert his factual innocence of the charge, and the State presented no affirmative evidence that Scott was guilty. We hold that, for purposes of sentencing, Scott's no contest plea conclusively established his guilt of attempted first-degree sexual abuse of a minor, and therefore the sentencing judge had a reasoned basis for ordering Scott to undergo sex offender treatment.

*Proceedings in the Trial Court*

Joseph Michael Scott was indicted for first-degree sexual abuse of a minor, AS 11.41.434(a). The State alleged that Scott had engaged in non-consensual cunnilingus with an eight-year-old girl, the daughter of his girlfriend. Although Scott denied this allegation, he ultimately pleaded no contest to a reduced charge of attempted first-degree sexual abuse of a minor; concomitantly, he stipulated that the State could prove aggravating factor AS 12.55.155(c)(10)—that Scott's conduct was among the most serious included within the definition of attempted first-degree sexual abuse. For its part, the State agreed that Scott, a first offender, would receive no more than 5 years to serve (although additional imprisonment could be suspended).

At Scott's sentencing, contention arose over a condition of probation proposed by the pre-sentence investigator. The pre-sentence investigator asked the court to order Scott to participate in sex offender treatment while he served his prison term. Scott argued that the court should not impose this requirement.

In support of her argument against the proposed condition of probation, Scott's attorney submitted an evaluation performed by Dr. Paul Wert, a clinical psychologist. According to Dr. Wert's report, when Scott was asked about the sexual misconduct alleged against him, Scott "adamantly denied that he

in any fashion had sexual contact with [the victim]". Scott stated that he had accepted the plea bargain because he "couldn't fight" the State's case.[1]

Based upon his evaluation of Scott, Dr. Wert reached the following conclusion:

> Concerning the currently pending charge, Mr. Scott ... adamantly denies that he was involved in any act of [abuse or] inappropriate ... sexual behavior. Mr. Scott is in many respects convincing in ... his denial of the alleged behavior.... [It is clear] that Mr. Scott is not at all interested in participating in a treatment program for sexual offenders[.] It also seems clear to this writer that if Mr. Scott in fact [committed the acts] alleged, and is "in denial", it is extremely unlikely that his denial will be altered. To place him in a [sex offender] program ..., with the possibility that he could receive additional institutional time should he not admit to the behavior which resulted in the ... pending charge, [would] make little sense.

Based upon Dr. Wert's evaluation, Scott's attorney asked Superior Court Judge Walter L. Carpeneti to refrain from directly ordering Scott to participate in sex offender treatment. Instead, the defense attorney suggested

> that the court treat this [case] as it would a case of substance abuse or [a case involving] any other problem where there are specialists in the area. [The court should] require, as a condition of probation, that Mr. Scott comply or cooperate with the evaluation process, but not require [treatment] from the bench. Let [that] be a decision made by experts in the field.

The defense attorney's suggestion led to the following colloquy between Judge Carpeneti and the defense attorney:

> THE COURT: But ... won't that lead to a situation where ... Mr. Scott says, "Well, I didn't do it," and the psychologist says, "There's nothing more to talk about"? I mean, that's a prescription for five years of dead time [with] no treat-

---

1. When asked how he accounted for the girl's allegations, Scott stated that she might have accused him because she held a "grudge" against Scott, because she did not like his exercising authority over her. Scott also suggested that "someone else in the house might have sexually abused [the girl]", and that it was "a case of mistaken identity".

ment, [then] back on the street.... I have to proceed on [the premise] that Mr. Scott did these acts. I know he says he didn't do them, but ... the legal reality is that he did[.] And under those circumstances, it would seem ... to be a bit irresponsible for a court to say, "I'll leave it to someone else", knowing full well [that] there's no one else out there [who is] going to do it.

[I understand] that there are three or four [prisoners] for every available [place in the] sexual offender treatment [programs], and if a person doesn't get with the program—which means acknowledg[ing] what they've done and start working on it—they're out. [But] I'm just certain that if I do what you suggest, [then] nothing will happen[.]

. . .

DEFENSE COUNSEL: What this court knows is that ... people who have entered no contest pleas [as a compromise resolution of their case] are being ordered into sex offender treatment programs, and as soon as they say, "I can't admit that", they're not allowed to be in the treatment, and [their] probation is being revoked before they've completed their [prison sentence]. . . .

THE COURT: ... [W]e all have [to have] our eyes open going into it. But I don't think the defendant's saying, "I stand on my right to plead no contest", means that the court has to then accept that [the offense] didn't happen.

DEFENSE ATTORNEY: Well, that's my argument to the court.

Despite the defense attorney's argument, Judge Carpeneti imposed special condition of probation number 4, requiring Scott to "[e]nter, actively participate in, and successfully complete a sex offender treatment program while in custody[,][and] not discontinue treatment without the written approval of the treatment provider and the supervising probation officer." In addition to imposing this requirement as a condition of probation, Judge Carpeneti also imposed this same requirement as a direct provision of Scott's sentence. *See* AS 12.55.015(a)(10).

*Scott's Arguments on Appeal*

On appeal, Scott again challenges Judge Carpeneti's decision to require him to participate in and complete sex offender treatment. Scott frames his argument in terms of three different legal theories.

First, Scott argues that Judge Carpeneti's decision violates substantive due process because the decision is arbitrary and lacks any factual basis. Second, Scott contends that the judge's decision violates the legislative intent behind AS 12.55.015(a)(10), the statute that authorizes a sentencing court to order a defendant to undertake rehabilitative treatment while in prison. Scott argues that, as a prerequisite to exercising its sentencing authority under AS 12.55.015(a)(10), a sentencing court must have a factual basis for determining that the defendant does in fact need treatment and that the treatment ordered by the court is in fact appropriate. *Compare Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977) (conditions of probation "must be reasonably related to the rehabilitation of the offender and the protection of the public", and they "must not be unduly restrictive of [the offender's] liberty"). Third, and alternatively, Scott argues that Judge Carpeneti denied him procedural due process because, to the extent Judge Carpeneti purported to find the required factual predicate for ordering Scott to submit to treatment, the judge made this finding without affording Scott the opportunity to litigate whether sex offender treatment was truly necessary (because he was innocent).

Although Scott has presented three different legal theories for questioning Judge Carpeneti's decision to require sex offender treatment, each of these legal theories relies on the same premise—the assumption that Scott was entitled to plead no contest to attempted first-degree sexual abuse of a minor and still maintain his factual innocence for purposes of sentencing. This is not correct.

 Commentators and courts universally agree that when a defendant pleads no contest to a crime, the defendant waives his or her right to challenge the State's proof of the essential elements of that crime.

Literally[,] nolo contendere means "I will not contest it." It is a mere statement of unwillingness to contest and no more. But with respect to the case in which it is entered, a plea of nolo contendere ... has the same effect as a plea of guilty. It is an admission of every essential element of the offense well pleaded in the charge, and is tantamount to an admission of guilt for the purposes of the case.... No issue of fact remains.

Charles A. Wright, *Federal Practice and Procedure (Criminal)* (1982), § 177, Vol. 1, pp. 662–64 (footnotes omitted). It is "beyond question that for the purpose of the [criminal] case a plea of nolo contendere is the full equivalent of a plea of guilty"; a plea of no contest is "in effect a consent that the court may proceed to accept the allegations in the indictment as true". C.T. Drechsler, *Annotation: Plea of Nolo Contendere or Non Vult Contendere*, 89 A.L.R.2d 540 (1963), § 2 at 547.

For example, in *United States v. Norris*, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076 (1930), the defendant pleaded no contest to conspiring to transport liquor in violation of the Prohibition Act of 1919. But when he appeared for sentencing, Norris filed a motion in arrest of judgement "upon the grounds that ... he was not guilty of the crime charged". In his motion, Norris asserted "that the record disclosed that he merely purchased liquor, ... and that the record failed to show such degree of affirmative co-operation on his part as would render him liable as a conspirator in the unlawful transportation". *Norris*, 281 U.S. at 622, 50 S.Ct. at 425, 74 L.Ed. at 1077.

The Supreme Court held that Norris, having entered a plea of no contest, was powerless to assert his innocence of any element of the crime: "[I]n the face of the plea[,] no issue of fact exists, and none can be made while the plea remains of record." *Norris*, 281 U.S. at 623, 50 S.Ct. at 425, 74 L.Ed. at 1077.

In *United States v. Freed*, 688 F.2d 24 (6th Cir.1982), the defendant pleaded no contest to three counts of willfully failing to pay income taxes. He later asserted that the government's evidence did not establish that his failure to pay the taxes had been willful. The court answered:

Like a plea of guilty, a plea of nolo contendere constitutes a waiver of ... the right to contest the factual merits of the charges[.] ... By pleading nolo contendere, Freed has admitted that he acted willfully. He cannot now be heard to attack the evidence as insufficient to support a finding of willfulness.

*Freed*, 688 F.2d at 25–26.

In *State v. Kilmer*, 194 Neb. 434, 231 N.W.2d 708 (1975), the defendant was a county clerk who pleaded nolo contendere to a charge of malfeasance in public office. The criminal complaint asserted that he had used his county office for a private purpose by employing county equipment, supplies, and labor to mail out literature advocating a particular result in an impending union election. On appeal, the defendant argued that he had been legally entitled, as the county clerk, to take this action:

Much of the [defendant's] argument was devoted to the proposition that the defendant, [in his official capacity] as county clerk[,] had a right to campaign against union representation of county employees. The [defendant's] plea of nolo contendere forecloses this argument because [the plea] admitted the allegation that the literature was intended for the private use of the defendant rather than official use in his capacity as county clerk. A plea of nolo contendere admits the matters alleged in the information and has the same effect as a plea of guilty so far as issues of fact are concerned.

*Kilmer*, 231 N.W.2d at 710 (citation omitted).

*Accord: Urbano v. New Jersey*, 225 F.Supp. 798, 810–11 (D.N.J.1964), *aff'd* 333 F.2d 845 (3rd Cir.1964) (a defendant who pleaded no contest to murder could not thereafter assert that he was insane when he committed the killing) (applying state law); *State v. Redman*, 81 Ohio App.3d 821, 612 N.E.2d 416, 418 (1992) (The defendant pleaded no contest to an indictment charging him with "aggravated vehicular homicide" for operating a motor vehicle while intoxicated and killing two people. On appeal, the court held

that the defendant was foreclosed from arguing at sentencing that the government's evidence failed to establish that he was under the influence.); *Keim v. State,* 13 Kan.App.2d 604, 777 P.2d 278, 281 (1989) (a defendant who pleaded no contest to rape could not thereafter challenge the sufficiency of the government's evidence that the victim did not consent to the act of sexual intercourse); *Giannetta v. State,* 296 So.2d 654, 655 (Fla. App.1974) (The defendant pleaded no contest to possession of marijuana paraphernalia; he later contended that, "from the evidence, it cannot be established that [he] had knowledge of or control over the contraband." The appeals court responded: "[T]he appellant here is precluded by [his nolo contendere] plea from questioning whether the state could have established his knowledge ... or control[.]").

Alaska follows this same rule. *See Cooksey v. State,* 524 P.2d 1251, 1255 n. 5 (Alaska 1974) ("The legal effect of a plea of nolo contendere is as conclusive as to the guilt of a defendant as a plea of guilty"). *Compare In re Schuler,* 818 P.2d 138, 141 & n. 5 (Alaska 1991) (an attorney who pleaded no contest to concealment of merchandise could not, in subsequent bar disciplinary proceedings, contest the fact that he had acted with intent to deprive the store owner of the property, since this was an element of the offense to which he entered his plea).

■ In Alaska, a defendant charged with a criminal offense has the right to plead no contest even when the defendant simultaneously maintains his or her factual innocence. *Miller v. State,* 617 P.2d 516, 518–19 (Alaska 1980). But, as the above authorities demonstrate, once a defendant enters a knowing and voluntary no contest plea, the sentencing court is entitled to treat each element of the offense as having been proved, despite the defendant's protestations of innocence.

■ In the present case, Scott pleaded no contest to attempting to sexually penetrate a minor under the age of 13. Having entered this plea, Scott could no longer assert (for sentencing purposes) that he was not factually guilty of this sexual misconduct. Scott's plea was an admission of every essential element of the offense; no issue of fact remained. *Miller, supra; Cooksey, supra.*

Judge Carpeneti did not need to hold a hearing or take additional evidence to decide whether Scott had in fact tried to engage in sexual penetration with his eight-year-old victim. Scott's no contest plea conclusively established this fact for sentencing purposes. Judge Carpeneti thus had an ample, case-specific basis for concluding that sex offender treatment was appropriate in Scott's case and that Scott should be required to undertake that treatment.

To the extent that Dr. Wert questioned the appropriateness of sex offender treatment based on the possibility that Scott was innocent, Dr. Wert's doubts are irrelevant. To the extent that Dr. Wert questioned the ultimate effectiveness of sex offender treatment because Scott persisted in claiming that he had done nothing wrong, the answer was provided by Judge Carpeneti in his colloquy with defense counsel: Judge Carpeneti noted that if the law prohibited him from ordering sex offender treatment for Scott simply because Scott refused to admit that he had engaged in sexual misconduct, this would be "a prescription for five years of dead time [with] no treatment", at the end of which Scott would be "back on the street".

Alaska law does not prohibit a judge from ordering rehabilitative measures simply because the defendant announces a present unwillingness to cooperate in those measures. After Scott begins treatment, he may decide to willingly participate in the therapy. Even if Scott's position never alters, Judge Carpeneti was nevertheless authorized to try this rehabilitative option.

On appeal, Scott's attorney argues that if Scott continues to assert his innocence, then he will probably be dropped from the sex offender treatment program, thus creating "a substantial likelihood that Mr. Scott's probation will ultimately be revoked ... for failure to comply with the court's order regarding sex offender treatment." This argument is premature. Scott is free to raise it again if and when Scott's probation is ever revoked for willful failure to comply with the sentencing court's order.

The judgement of the superior court is AFFIRMED.