Jason Gerald **ASHENFELTER,**
Appellant,

v.

**STATE of Alaska, Appellee.**

No. A–7016.

Court of Appeals of Alaska.

Sept. 24, 1999.

 

Leslie A. Hiebert, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, for Appellant.

John Skidmore, Assistant District Attorney, Susan A. Parkes, District Attorney, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## O P I N I O N

MANNHEIMER, Judge.

In this appeal, we are required to interpret and apply the legal doctrine announced in *Hamilton v. State* [1]—the doctrine that defendants have a conditional right to confront the witnesses against them at sentencing. Under *Hamilton,* this right comes to fruition if a defendant takes the stand, denies the government's factual allegations under oath, and submits to cross-examination.[2]

The defendant in this case, Jason Gerald Ashenfelter, pleaded no contest to third-degree assault. He was subject to presumptive sentencing because he was a second felony offender. The State announced that it would rely on hearsay evidence (grand jury testimony and the pre-sentence report) to establish that Ashenfelter's crime was aggravated under AS 12.55.155(c)(10). (Proof of this aggravating factor would subject Ashenfelter to increased penalties.) In response, the defense attorney invoked *Hamilton:* she declared that her client would take the stand to refute the State's allegations, and she insisted that the State produce live witnesses to substantiate its proposed aggravating factor.

To this end, Ashenfelter took the stand, ostensibly to oppose the State's hearsay evidence that his crime was aggravated. But Ashenfelter proceeded to deny that he had committed any crime; he testified to a completely exculpatory version of events. The sentencing judge concluded that Ashenfelter's testimony was totally unbelievable, and the judge therefore ruled that, despite this

---

1. 771 P.2d 1358 (Alaska App.1989).

2. *See id.* at 1362.

testimony, the State would be allowed to rely on hearsay evidence to prove its proposed aggravating factor. Based on the State's hearsay evidence, the judge found that Ashenfelter's crime was aggravated, and the judge sentenced Ashenfelter to a term of imprisonment greater than the presumptive term.

Ashenfelter now appeals the sentencing court's decision to allow the State to rely on hearsay when it litigated aggravating factor (c)(10). As explained here, we conclude that the State was not entitled to rely on the hearsay evidence, and therefore we vacate the superior court's finding of aggravator (c)(10) and remand this case to the superior court for renewed sentencing proceedings.

*Background facts and procedural history*

According to the State's evidence at grand jury, Jason Ashenfelter and a companion, Ronald Harold Mahle, Jr., broke into a man's house and assaulted him. Mahle fired a handgun at the victim, wounding him severely in the arm and slightly in the head. Then Ashenfelter, using a baseball bat, struck the victim in the head. Both Ashenfelter and Mahle were indicted for attempted murder and first-degree assault.

The State ultimately dropped the attempted murder charges. Mahle (the shooter) pleaded no contest to the remaining count of first-degree assault. In Ashenfelter's case, the State lowered the assault charge from first-degree to third-degree.[3] The amended charging document alleged that Ashenfelter, acting either "as principle [sic] or accomplice, recklessly caused physical injury to [the victim] by means of a dangerous instrument". Ashenfelter pleaded no contest to this reduced charge.

Because Ashenfelter had a prior felony conviction, he was subject to presumptive sentencing.[4] The legal issues in this case arose when the State asked the superior court to find that Ashenfelter's offense was aggravated under AS 12.55.155(c)(10)—*i.e.*,

that Ashenfelter's conduct "was among the most serious conduct included in the definition" of third-degree assault.

The State characterized Ashenfelter's conduct as "among the most serious" based on two factors. First, the State alleged that Ashenfelter's conduct "was purposeful accomplice behavior, not just reckless". Second, the State alleged that Ashenfelter "struck a person who already had been shot in the head by his co-defendant". According to the State, these aspects of Ashenfelter's conduct were "consistent" with the more serious crimes of first- and second-degree assault.[5]

As factual support for its assertions, the State announced that it would rely on hearsay—specifically, the testimony presented to the grand jury and the descriptions of the offense contained in the pre-sentence report. When Ashenfelter was apprised of this, he chose to take the stand to contest the State's hearsay evidence.

Testifying under oath and submitting himself to cross-examination, Ashenfelter declared that, when he accompanied Mahle to the victim's house, he did not know that Mahle intended to assault anyone. According to Ashenfelter, Mahle told him that he wanted to go to the victim's house to try to smooth over a prior dispute and effect a reconciliation. Ashenfelter testified that he waited outside while Mahle went into the house. He did not know that Mahle was armed.

A few moments later, when Ashenfelter heard gunshots, he thought that Mahle was being attacked. Fearing for Mahle's safety, Ashenfelter picked up a baseball bat that was lying outside the house, and then he went inside to retrieve Mahle. Ashenfelter stated that, after he entered the house, he "grabbed [Mahle] and took him out of there". Ashenfelter declared that, even though he carried the bat into the house, he never swung the bat and he never hit the victim (or anyone else) with it.

---

**3.** AS 11.41.220(a)(1)(B).

**4.** *See* AS 12.55.125(e)(1).

**5.** *See Benboe v. State,* 698 P.2d 1230, 1231 n. 2 (Alaska App.1985) (a defendant's conduct is "among the most serious" when it would support the defendant's conviction for a higher degree of the same crime).

Based upon Ashenfelter's testimony, and relying on this court's decision in *Hamilton*, the defense attorney asked Superior Court Judge Eric T. Sanders to ignore any contrary hearsay assertions contained in the grand jury testimony and the pre-sentence report.

Judge Sanders acknowledged the *Hamilton* issue, but he concluded that the *Hamilton* rule did not apply to Ashenfelter's case because, after listening to Ashenfelter's testimony, the judge found it unbelievable. Judge Sanders concluded that "[Ashenfelter's] testimonial denial [had] zero impact [on] the truth-finding process" and that, therefore, Ashenfelter's testimony was not legally sufficient to place the State's hearsay allegations in dispute. Having reached this conclusion, Judge Sanders ruled that, despite *Hamilton*, he could rely on the State's hearsay allegations when he sentenced Ashenfelter—and, specifically, when he decided whether the State had proved aggravating factor (c)(10).

Based on the grand jury testimony and the pre-sentence report, Judge Sanders found that the State had proved aggravator (c)(10). And based on that aggravating factor, the judge increased Ashenfelter's 2–year presumptive term by adding 1 year of suspended imprisonment. That is, Judge Sanders sentenced Ashenfelter to 3 years' imprisonment with 1 year suspended.

In this appeal, Ashenfelter renews his claim that, once he took the stand·and denied wrongdoing, he became entitled to the right of confrontation described in *Hamilton*. Accordingly, Ashenfelter argues, the State could no longer rely on hearsay evidence to establish the facts of the case and, in particular, to establish aggravating factor (c)(10) (conduct among the most serious within the definition of third-degree assault).

The State offers two responses. First, the State argues that Ashenfelter could no longer contest his guilt once he pleaded no contest. Second, the State argues that even if Ashenfelter was entitled to assert his factual innocence, it was up to Judge Sanders to evaluate the credibility of Ashenfelter's testimony. According to the State, once Judge Sanders concluded that Ashenfelter's testimony was false, the *Hamilton* rule no longer applied, and the judge was authorized to ignore Ashenfelter's testimony and rely on the State's hearsay evidence.

*Ashenfelter was not entitled to assert his factual innocence of third-degree assault after he pleaded no contest, but he was still entitled to dispute the State's assertion that his offense was aggravated.*

In *Scott v. State* [6], this court held that defendants who plead no contest can no longer contest their factual guilt for sentencing purposes. Rather, a defendant's plea "is an admission of every essential element of the offense well pleaded in the charge".[7] When a judge sentences a defendant who has pleaded no contest, the judge "is entitled to treat each element of the offense as having been proved, despite the defendant's protestations of innocence." [8]

As explained above, Ashenfelter testified that he did not know that Mahle was armed and did not know that Mahle was going to commit an assault. He testified that he entered the victim's house only because he heard gunshots and feared that Mahle was being attacked. Further, Ashenfelter testified that he armed himself with a baseball bat only for defensive purposes and that he never used the bat as a weapon. In sum, Ashenfelter declared that he was completely innocent of wrongdoing.

Under *Scott*, Ashenfelter was not entitled to dispute his guilt of third-degree assault under AS 11.41.220(a)(1)(B) as alleged in the charging document. Judge Sanders could properly disregard Ashenfelter's protestations of innocence, even though these protestations were made under oath.

But, as explained earlier, the State alleged that Ashenfelter's offense was aggravated

---

**6.** 928 P.2d 1234 (Alaska App.1996).

**7.** *Id.* at 1237 (quoting Charles A. Wright, *Federal Practice and Procedure (Criminal)* (1982), § 177, Vol. 1, p. 663–64).

**8.** *Id.* at 1238.

because, even though it was charged as a third-degree assault, it really amounted to a higher degree of assault. Ashenfelter's no contest plea did not constitute a concession that he had committed a more serious offense.

By pleading no contest to third-degree assault, Ashenfelter conceded that he recklessly inflicted physical injury on another person. But he did not concede the elements that distinguish third-degree assault from the higher degrees of assault.

In particular, all forms of first-degree assault defined in AS 11.41.210(a) require proof that the defendant caused *serious* physical injury (not just physical injury).[9] And of the three forms of second-degree assault defined in AS 11.41.220(a), two likewise require proof that the defendant inflicted serious physical injury.[10] The charge against Ashenfelter did not include an allegation of serious physical injury, and thus Ashenfelter's plea did not concede this element. He was entitled to dispute it at sentencing.

This leaves second-degree assault as defined in AS 11.41.210(a)(1). Under this subsection of the statute, second-degree assault is committed if a defendant, acting *"with intent* to cause physical injury to another person, ... causes physical injury to another person by means of a dangerous instrument". Thus, this form of second-degree assault requires a more blameworthy culpable mental state than the culpable mental state that Ashenfelter conceded when he pleaded no contest to third-degree assault under AS 11.41.220(a)(1)(B). Although both offenses require proof that the defendant inflicted physical injury on another person by means of a dangerous instrument, the crime is second-degree assault only if the State proves that the defendant *intended* to inflict physical injury. The crime is third-degree assault if the State proves the lesser culpable mental state of "recklessly"—that is, proves that the defendant recklessly ignored the possibility that their conduct might cause physical injury.

The charging document in this case does not allege that Ashenfelter intentionally caused physical injury to the victim; instead, the charge states that Ashenfelter "recklessly" inflicted injury on the victim. Thus, by pleading no contest to this charge, Ashenfelter did not concede the element of intent to cause physical injury.

The State implicitly acknowledges that this is true with respect to the allegation that Ashenfelter, as a principal, recklessly caused physical injury to the victim by using a baseball bat. But the State points out that Ashenfelter was also charged with participating in the shooting as Mahle's accomplice. Based on this allegation (and Ashenfelter's subsequent plea of no contest to that allegation), the State asserts that Ashenfelter's conduct was "purposeful accomplice behavior, not just reckless".

■ The State assumes that, if Ashenfelter purposely aided or abetted his co-defendant's assault on the victim with the handgun, this fact aggravates Ashenfelter's offense. It does not.

Aggravating factor (c)(10) and all the other aggravating factors listed in AS 12.55.155(c) are intended to be criteria for assessing whether a defendant's conduct and background make their offense more serious than a typical offense committed by a typical first, second, or third felony offender.[11] Although Ashenfelter engaged in "purposeful" behavior that rendered him liable as an accomplice for his co-defendant's assault, this fact does not make Ashenfelter's crime atypically blameworthy. Under AS 11.16.110(2), *all* accomplice behavior must be "purposeful".

■ AS 11.16.110(2) declares that a defendant can be held criminally responsible for another person's conduct if the State proves two things. First, the State must prove the

---

9. *See* AS 11.41.200(a)(1)-(4).

10. *See* AS 11.41.210(a)(2)-(3).

11. *Cf. Looney v. State,* 826 P.2d 775, 780 (Alaska App.1992) (When aggravating and/or mitigating factors are proved, a defendant's presumptive term should be adjusted to "the degree to which [those] factors ..., evaluated in light of the *Chaney* criteria, distinguish the defendant or the defendant's conduct from the typical offender and offense envisioned by the legislature when it established the presumptive terms.")

specified *actus reus*—that the defendant "solicit[ed] the other [person] to commit the offense" or "aid[ed] or abet[ted] the other [person] in planning or committing the offense". Second, the State must prove *mens rea*—that the defendant engaged in this conduct "with [the] intent to promote or facilitate the commission of the offense". Because this *mens rea* element requires proof that the accomplice acted with the intent to promote or facilitate the offense, there is no such thing as "reckless" accomplice behavior. All accomplice behavior must be intentional (or, using the adjective from the State's pleading, "purposeful"). Under the complicity statute, there is no criminal liability if the State can prove only that the defendant recklessly disregarded the possibility that their conduct might promote or facilitate a crime.[12]

Moreover, in *Echols v. State*[13], this court construed AS 11.16.110(2) to mean that, when a defendant is charged as an accomplice to a crime requiring proof of a specific result (such as the infliction of injury), the defendant's complicity is not established unless the State proves that the defendant acted with *intent* to bring about the specified result, even though a principal could be convicted upon proof of some lesser culpable mental state (*i.e.*, recklessness or negligence).[14]

Thus, the State is correct that, when Ashenfelter chose not to contest accomplice responsibility for the shooting committed by his co-defendant Mahle, Ashenfelter effectively conceded that he acted with "intent to promote or facilitate" that assault—*i.e.*, that he purposefully aided or abetted (encouraged) Mahle in planning or committing the assault, and that he intended the victim to suffer physical injury. Without proof of these culpable mental states, there could be no complicity. But because the State had to prove these culpable mental states as an element of its case, the existence of these culpable mental states could not serve as an aggravating factor. AS 12.55.155(e) declares that "[i]f a factor in aggravation is a necessary element of the present offense, ... that factor may not be used to aggravate the presumptive term."

*By taking the stand and denying under oath that he acted with intent to cause physical injury, Ashenfelter became entitled to the right of confrontation recognized in Hamilton v. State.*

■ In *Hamilton v. State*[15], this court addressed the use of hearsay evidence at sentencing. We recognized that, under federal law, a defendant has no right to confront and cross-examine adverse witnesses at sentencing.[16] We further recognized that, pursuant to Alaska Evidence Rule 101(c)(2), the rules restricting the admission of hearsay evidence do not apply at sentencing.[17] At the same time, however, we noted that both the Alaska Supreme Court and the Alaska Legislature had shown a preference for live testimony at grand jury proceedings.[18] We also noted our own prior decisions dealing with motion practice: when motions are litigated, the government can not rely on affidavits to rebut a defendant's sworn testimony.[19] After reviewing these authorities and the policies they embody, we concluded that the risks of hearsay evidence were substantial enough that the use of hearsay should be restricted at sentencing. Accordingly, we adopted the rule that when a defendant denies the State's allegations under oath and

---

12. *See, e.g., Bowell v. State*, 728 P.2d 1220, 1222–23 (Alaska App.1986), *overruled on other grounds, Echols v. State*, 818 P.2d 691 (Alaska App.1991).

13. 818 P.2d 691 (Alaska App.1991).

14. *See id.* at 694–95.

15. 771 P.2d 1358 (Alaska App.1989).

16. *See id.* at 1361 (citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)).

17. *See id.* Evidence Rule 101(c)(2) states: "The [evidence] rules, other than those with respect to privileges, do not apply in ... sentencing [proceedings.]"

18. *See id.* at 1362.

19. *See id.; see also Alexander v. State*, 611 P.2d 469, 474–75 (Alaska 1980); *Boggess v. State*, 783 P.2d 1173, 1180 (Alaska App.1989) (holding that when disputed factual issues are presented in competing affidavits, a court can not resolve the disputes without hearing from the witnesses personally); *Adams v. State*, 704 P.2d 794, 797–98 (Alaska App.1985).

submits to cross-examination, the State should then be required either to produce its witnesses in court or prove that the witnesses are unavailable and that the circumstances tend to confirm the witnesses' veracity.[20]

In the present case, Ashenfelter took the stand at sentencing for the express purpose of rebutting the State's hearsay evidence (the grand jury testimony and the pre-sentence report), so as to trigger the State's obligation under *Hamilton* to produce live witnesses to support its factual assertions. As already described, Ashenfelter testified to a version of events that completely exculpated him. He was not entitled to do this. By pleading no contest, Ashenfelter conceded (for sentencing purposes) that he recklessly caused physical injury to his victim.

But despite his no contest plea, Ashenfelter retained the right to contest the two elements that distinguished his offense (third-degree assault) from the higher degrees of assault that the State was trying to prove in order to establish aggravator (c)(10). That is, Ashenfelter was still entitled to deny that he caused *serious* physical injury to his victim. And, with respect to his actions as a principal (that is, as the wielder of the baseball bat), Ashenfelter was still entitled to deny that he acted *with intent* to cause physical injury. With respect to these elements, Ashenfelter's testimony triggered the *Hamilton* rule.

The prosecutor announced that, notwithstanding Ashenfelter's testimony, she did not intend to produce live witnesses to support the aggravating factor. She contended instead that, even under *Hamilton*, the State had no obligation to produce live witnesses unless Ashenfelter's testimony "undermine[d] the information set forth in the grand jury testimony and ... the pre-sentence report". Specifically, the prosecutor argued that if Judge Sanders found that Ashenfelter's testimonial denial was not credible, then the situation was the same as if Ashenfelter had never taken the stand, so

the State could still rely on hearsay evidence to establish aggravator (c)(10).

Judge Sanders adopted the State's position. He declared that he found Ashenfelter's testimony to be unbelievable. Judge Sanders then ruled that, because Ashenfelter's testimony had "zero impact in terms of the truth-finding process", he could rely on the hearsay contained in the grand jury testimony and the pre-sentence report to decide whether the State had established the aggravator.

There had been no trial, so Judge Sanders presumably had no knowledge of Ashenfelter's offense except from the attorneys' descriptions (which are not evidence) and from the hearsay accounts offered at grand jury and contained in the pre-sentence report. Thus, the record strongly suggests that, when Judge Sanders concluded that Ashenfelter was an unbelievable witness, he did so because Ashenfelter's account varied so greatly from the hearsay accounts offered by the State. *Hamilton* forbids this. Once Ashenfelter testified and submitted to cross-examination, the sentencing judge could no longer rely on the State's contrary hearsay assertions (unless the State affirmatively proved that its witnesses were unavailable and that the circumstances indicated that these witnesses were trustworthy).

More important, even if we assume that Judge Sanders evaluated Ashenfelter's credibility based solely on his demeanor, and quite apart from the content of his testimony, this would not alter the application of the *Hamilton* rule. It must be remembered that the underlying question facing Judge Sanders was whether the State had proved aggravator (c)(10) by showing that Ashenfelter's conduct actually amounted to either first- or second-degree assault. Even though Judge Sanders concluded that Ashenfelter's version of events was completely untrustworthy, the State still bore the burden of proof.[21] Thus, the real issue was whether the *State's* version of events was trustworthy. Because of this, we hold that *Hamilton* continues to apply to a defendant's sentencing even

---

**20.** *See Hamilton,* 771 P.2d at 1362–63.

**21.** *See* AS 12.55.155(f) ("Factors in aggravation and factors in mitigation must be established by clear and convincing evidence[.]")

though the sentencing judge may conclude that the defendant's testimony is unbelievable.

*Conclusion*

The State bore the burden of proving aggravator (c)(10). Under *Hamilton*, Ashenfelter's decision to take the stand changed the procedural rules at sentencing, restricting the ways in which the State could meet this burden. The State could no longer rely on the hearsay that is normally offered at sentencing hearings. Instead, the State either had to produce its witnesses or show that these witnesses were unavailable and that there was good reason to credit their out-of-court statements.

Because the State presented no witnesses in court, and because Judge Sanders was not authorized to consider the State's hearsay evidence, there is no evidence to support Judge Sanders's finding of aggravator (c)(10). We accordingly hold that the judge's finding is clearly erroneous.[22]

The State did not propose any other aggravating factors, and Judge Sanders found no others. Thus, in the absence of aggravator (c)(10), Judge Sanders had no authority to increase Ashenfelter's presumptive term.

The superior court's sentencing decision is therefore VACATED, and the superior court is directed to re-sentence Ashenfelter. If the State fails to prove aggravator (c)(10) under the rules established in *Hamilton*, then the superior court shall sentence Ashenfelter to the 2–year presumptive term specified in AS 12.55.125(e)(1), deleting the additional year of suspended imprisonment that was imposed at Ashenfelter's original sentencing.

COATS, Chief Judge, concurring.

I have no quarrel with the application of the *Hamilton* rule in this case.[1] However, I wish to repeat the position which I took in my concurring opinion in *Hamilton:*

I am not confident, however, that in every case where the defendant denies a material matter we should require the state either to call a witness to testify at the sentencing hearing or to prove the unavailability of a witness before using hearsay statements. I would prefer to resolve this issue on a case-by-case basis. It is important for the trial court to have as much reliable information as possible when sentencing a defendant. I am concerned that the rule which the court announces in this case may unduly restrict that information in other cases.[2]

**22.** *See Lepley v. State,* 807 P.2d 1095, 1099 n. 1 (Alaska App.1991) (a sentencing judge's decisions as to the existence of proposed aggravators and mitigators are to be affirmed unless they are clearly erroneous).

**1.** *See Hamilton v. State,* 771 P.2d 1358 (Alaska App.1989).

**2.** *Id.* at 1364.