NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts.*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHAEL D. WARLICK JR., | ) | |
| | ) | Court of Appeals No. A-10821 |
| Appellant, | ) | Trial Court No. 4FA-07-780 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Appellee. | ) | No. 2421 — July 25, 2014 |

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Randy M. Olsen, Judge.

Appearances: Hannah E. King, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge HANLEY.

_____

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

Michael D. Warlick Jr. applied for and obtained a state identification card using another person's name and identifying information. He was charged with two crimes: second-degree forgery and fraudulently applying for a state identification card. Under the terms of a plea agreement, Warlick ultimately pleaded guilty to second-degree forgery under AS 11.46.505(a)(2), and the State dismissed the fraudulent application charge.

Prior to his sentencing, Warlick filed a motion asking the superior court to declare, as a matter of law, that his conduct did not constitute the offense of second-degree forgery. The court denied the motion, and Warlick now appeals. For the reasons explained here, we affirm the superior court's ruling.

*Facts and proceedings*

On January 31, 2007, Jason Corgill entered the Delta Junction office of the Division of Motor Vehicles (DMV) and applied for a state identification card. The DMV clerk recalled issuing an identification card several months earlier to another person under the name "Jason Corgill." The clerk contacted the state troopers, who investigated the incident and discovered that the person who applied for the earlier identification card was actually Michael Warlick Jr. Warlick had used Corgill's identifying information and had signed Corgill's name on the application form. Based on Warlick's false application, DMV issued an identification card to him. The card was in Corgill's name, but it had Warlick's photograph.

Warlick left the country shortly after obtaining the false identification card, and the troopers learned that there was an outstanding federal warrant for his arrest. In 2009, Warlick was arrested in Texas and returned to Alaska to face federal charges.

The State charged Warlick with second-degree forgery under AS 11.46.505(a)(2) (forgery of a public record) and fraudulently applying for a state identification card under AS 18.65.310(c). Under the terms of a plea agreement, Warlick pleaded guilty to the forgery charge and the State dismissed the fraudulent application charge.

Shortly before his sentencing, Warlick filed a motion asking the superior court to declare, as a matter of law, that the facts alleged by the State could not support a conviction for second-degree forgery. The court denied this motion, and Warlick appeals this ruling.

Before addressing the merits of Warlick's arguments, we must point out the irregular procedural posture of the case. As noted above, Warlick's conviction arises from a plea bargain: Warlick agreed to plead guilty to the forgery charge in exchange for the State's dismissal of the fraudulent application charge. Now, Warlick asks this Court to declare that his forgery conviction is invalid.

When a defendant negotiates a plea bargain with the State, he cannot "claim the benefit of the portions of the agreement that he likes [and], at the same time, mount[] an appellate attack on the portions that he does not like."[1] Instead, if a defendant pleads guilty to a charge and later claims that his conduct did not constitute the crime, he may seek to rescind the agreement, but he cannot ask the trial court (or this Court) to enforce the provisions of the agreement that are to his advantage and relieve him of those he dislikes.[2]

---

[1] *Grasser v. State*, 119 P.3d 1016, 1018 (Alaska App. 2005).

[2] *Wooley v. State*, 221 P.3d 12, 20 (Alaska App. 2009).

Thus, Warlick is asking this Court for relief to which he is not entitled. If this Court were to grant this relief, Warlick would receive an unjustified windfall because the other charge against him was dismissed under the assumption that he would be convicted of second-degree forgery.

This means that, even if we were to rule in Warlick's favor on the legal issues presented in this appeal, we would not reverse his second-degree forgery conviction. Instead, we would remand this case to the superior court to give Warlick an opportunity to withdraw his plea, with the understanding that, if he did, the parties would return to their pre-plea positions.[3]

However, for the reasons we are about to explain, we conclude that Warlick's claims have no merit.

*Why we reject Warlick's attacks on his forgery conviction*

The State charged Warlick with second-degree forgery under AS 11.46.505(a)(2). Under this subsection of the statute (in the context of Warlick's conduct), the State was required to prove that Warlick, (1) acting with intent to defraud, (2) falsely made or completed a written instrument, or knowingly uttered a forged instrument, and that (3) this written instrument was (or purported to be) a public record.

By pleading guilty, Warlick admitted the underlying *conduct* alleged by the State — *i.e.*, that he submitted an application to DMV for a state identification card, that he claimed in this application to be another person, and that he signed this other person's name on the application.[4] Warlick contends, however, that this conduct did not

---

[3]   *See id.* at 20.

[4]   *See Scott v. State*, 928 P.2d 1234, 1237 (Alaska App. 1996) (A plea of no contest and
(continued...)

constitute second-degree forgery for two reasons: first, he argues that an application for a state identification card is not a "public record" within the meaning of AS 11.81.900(b)(54)[5]; and second, he argues that he did not act with an "intent to defraud" as defined in AS 11.46.990(11).

We turn first to Warlick's argument that his application for an identification card was not a "public record" within the meaning of AS 11.81.900(b)(54).

Under the facts of Warlick's case, the pertinent part of this statute declares that Warlick's application for an identification card constitutes a "public record" if the application was (1) a document "developed or received under law or in connection with the transaction of official business" by DMV, and if (2) the document was "preserved or appropriate for preservation" by DMV as evidence of its "organization, function, policies, decisions, procedures, operations, or other activities[.]"

It is clear that Warlick's application for an identification card was a document that was both "developed" and "received" by DMV in connection with the transaction of its official business. It is also clear that this application was "preserved" by DMV as evidence of its operations.

Warlick claims, however, that an application for an identification card (or any other state benefit) cannot constitute a "public record" because it contains personal facts — facts such as the applicant's name, mailing address, hair color, and social

---

[4]    (...continued)
a plea of guilty have the same effect. They are both an admission of the well-pleaded elements of the charge. After a no contest or guilty plea, no issue of fact remains.) (citing 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure: Criminal* §177, at 662-64 (2d ed. 1982)).

[5]    At the time of Warlick's offense, the definition of "public record" was codified in AS 11.81.900(b)(53) (2006).

security number. Warlick argues that these identifying details are not evidence of the DMV's "organization, function, policies, decisions, procedures, or operations."

This is incorrect. Part of DMV's official function is to keep records pertaining to (1) who has applied for an identification card, and (2) who has been issued one. In addition, DMV must determine whether applicants are validly entitled to receive the identification cards they have applied for — or, as in Warlick's case, the identification card they have already received.[6]

Thus, the personal information included in the application is an important component of both DMV's recordkeeping and its decisionmaking. We accordingly reject Warlick's argument that, because his application for a state identification card contained identifying information that was not generated by DMV itself, the application could not qualify as a "public record."

Warlick also argues that the term "public record" does not include all documents that fit within the definition found in AS 11.81.900(b)(54), but only those documents that have independent "legal efficacy." To support this assertion, Warlick points to language in the Commentary to the Tentative Draft of the Alaska Criminal Code which states that "the forgery article prohibits conduct which is essentially preparatory to theft."[7] From this, Warlick reasons that the primary aim of the statutes outlawing forgery is to "deter harm to the pecuniary, property, or legal right[s] of another," and that only a document with "apparent legal efficacy" can work these types of harm. Warlick then asserts that a false *application* for a state identification card —

---

[6]  *See* AS 18.65.310.

[7]  Alaska Criminal Code Revision Part III, at 82 (Tent. Draft 1977).

as opposed to the false identification card itself — does not have this type of "legal efficacy."

We disagree with Warlick's contention for two reasons.

First, while it may be true that a primary purpose of the forgery statutes is to prevent or deter theft, the legislature did not include an independent "legal efficacy" requirement in its definition of "public record."

Second, treating a false application for an identification card as a "public record" *promote*s the aim of preventing or deterring theft because, generally, a person submits a false application for an identification card with the intention of causing DMV to *issue* the false identification card, and this false identification card can then be used to commit theft or other fraud.

Warlick next argues that false applications for identification cards should not be included within the definition of "public record" because the legislature did not intend for the forgery statutes to cover fraudulent applications for identification cards. Instead, Warlick contends, the legislature wanted this criminal conduct to be punished under the second-degree unsworn falsification statute.[8]

The second-degree unsworn falsification statute, AS 11.56.210(a)(1), states that a person commits this crime if, "with intent to mislead a public servant in the performance of a duty, the person submits a false written or recorded statement that the person does not believe to be true ... in an application for a benefit." Warlick reasons that if an application for a state benefit constitutes a public record for purposes of the

---

[8] AS 11.56.210.

forgery statute, then there would be no need for the legislature to also create the offense of unsworn falsification.

The flaw in Warlick's reasoning is illustrated by this Court's decision in *Gottlieb v. State*.[9] The defendant in *Gottlieb* applied for a medical license and falsely stated in his application that he had completed certain post-graduate training. Based on this false representation, Gottlieb was convicted of forgery.[10] But on appeal, this Court concluded that a forgery conviction was improper under these facts. Although the State proved that Gottlieb's application for the medical license contained false assertions of fact, those assertions did not misrepresent Gottlieb's identity as the person who prepared and submitted the application. Thus, the application was not "falsely made" as defined in AS 11.46.580(a)(3), and Gottlieb's conduct was not forgery.[11]

*Gottlieb* demonstrates that Alaska's forgery statutes criminalize certain types of false applications, but not all false applications. A person may commit second-degree unsworn falsification by knowingly including one or more false statements in an application for a state benefit, with the intent to mislead a public servant. But, as we held in *Gottlieb*, this conduct does not constitute forgery unless the false statements misrepresent the identity of the applicant. Therefore, contrary to Warlick's assertion, forgery and unsworn falsification are distinct crimes.

For this same reason, we reject Warlick's argument that his forgery conviction violates the *Pirkey/Olsen* rule — the rule declaring that the equal protection clause is violated when the criminal statutes prescribe both felony and misdemeanor

---

[9] 175 P.3d 664 (Alaska App. 2008).

[10] *Id.* at 666.

[11] *Id.* at 669.

punishments for exactly the same act committed under the same circumstances by persons in like situations.[12]

We now turn to Warlick's second major contention: that the facts of his case do not establish that he acted with an intent to defraud as defined in AS 11.46.990(11). Under this statute, "intent to defraud" is defined as "an intent to injure someone's interest which has value[,] or an intent to use deception."

Warlick asserts that, under this definition, the State was required to prove that when he submitted his false application for an identification card, he intended to harm the pecuniary interests of another.

While the statutory definition of "intent to defraud" clearly encompasses the intent to harm another person's pecuniary interests, it also encompasses a person's "intent to use deception." This term, "deception," is defined in AS 11.81.900(b)(18)(A) as including the act of knowingly "creat[ing] or confirm[ing] another's false impression that the defendant does not believe to be true, including false impressions as to law or value and false impressions as to intention or other state of mind."

Here, Warlick conceded (by his guilty plea) that he made a false application for an identification card using Jason Corgill's identifying information, that he submitted this false application to DMV, and that he received an identification card with Corgill's identifying information but with his own photograph. These facts give rise to a reasonable inference that Warlick applied for and procured this false identification card so that he could use it to mislead people about his identity — conduct that falls squarely within the definition of "deception." Thus, the facts of Warlick's case support a finding that he acted with intent to defraud.

---

[12] *See Bell v. State*, 598 P.2d 908, 912-14 (Alaska 1979); *State v. Pirkey*, 281 P.2d 698 (Or. 1955); *Olsen v. Delmore*, 295 P.2d 324 (Wash. 1956).

*Conclusion*

For the reasons explained in this opinion, we AFFIRM the judgment of the superior court.

2421